CLAY, Plaintiff in Error, v. MAYER et al.

Division One, June 20, 1904.

1. MARRIED WOMAN: Contract to Sell Land: Specific Performance. A married woman, since the passage of the Married Woman's Act of 1889, can contract for the sale of real estate, whether it be her separate estate or merely her legal estate. And if since that act went into effect she has made a contract to sell land inherited by her prior to the enactment of that statute, that contract may be enforced by a suit in equity against her.

2. ————: ————: ————: **Accounting.** Where the contract was to pay so much money to defendants for the land and to pay a mortgage lien thereon, and the money was paid and the plaintiff bought up the mortgage and directed the trustee to sell the land, and thereupon the defendants paid off the mortgage debt, the court will not decree specific performance, because plaintiff has failed to show a performance of the contract on his part, but a court of equity, having authority to do complete justice in the premises, will compel an accounting, and give plaintiff a lien on the land for the amount of money paid and interest.

Error to DeKalb Circuit Court.—*Hon. A. D. Burnes,* Judge.

REVERSED AND REMANDED (*with directions*).

*J. F. Harwood* for plaintiff in error.

*R. A. Hewitt, Jr.,* and *J. T. Blair* for defendants in error.

(1) Plaintiff is not entitled to specific performance. There is nothing to specifically perform. There is no suggestion that the land was Mrs. Mayer's separate property. Even her contract to convey could not be specifically enforced. Gwinn v. Smurr, 101 Mo. 550; Rush v. Brown, 101 Mo. 586; State v. Clay, 100 Mo. 571; Craig v. Van Bebber, 100 Mo. 584; McReynolds v. Grubb, 150 Mo. 362. (2) Plaintiff is not entitled to an accounting since she was not in possession. Clay v. Mayr, 144 Mo. 380. (3) There is no prayer for a money judgment and where the case goes out on demurrer none can be supplied or implied from the prayer for general relief. Rush v. Brown, 101 Mo. 590.

MARSHALL, J.—The plaintiff brings this case to this court by a writ of error, and asks a review of the judgment of the circuit court, sustaining a demurrer to her petition, she having refused to plead over.

The petition is as follows: "Plaintiff for cause of action and bill in equity states that the defendants are

husband and wife and were so at all times hereinafter mentioned.

"That on the twenty-seventh day of January, 1894, the defendants were the owners and in the possession of the following described tracts or parcels of land situate in DeKalb county, Missouri. (Here follows description of the land which is unnecessary to quote.)

"That on said last-mentioned date, the plaintiff contracted with the defendants to purchase said lands for the price and sum of seven hundred dollars, to be paid as follows: The sum of three hundred and forty dollars and fifty cents to be paid to one Thomas L. King, who held a mortgage to that amount against said lands; the balance, three hundred and fifty-nine dollars and fifty cents, to be paid to the defendants.

"That possession of said land was to be delivered to plaintiff by defendants on the first day of June, A. D. 1894. That in consequence of the lateness of the season, when possession was to be given to plaintiff, she employed defendant, Otto Mayer, to make improvements and to plant crops on such land to be grown during the crop season of 1894 and paid him therefor altogether the sum of thirty dollars. That it was agreed between the plaintiff and defendants that when plaintiff had assumed the payment of the mortgage aforesaid to the satisfaction of said Thomas L. King, and the balance of the purchase price of seven hundred dollars, to-wit, three hundred and fifty-nine dollars and fifty cents, paid to the defendants, then the defendants would make and execute to the plaintiff a general warranty deed to the lands described. That the plaintiff at the time of such contract of purchase and sale paid the de-defendants one dollar to bind the bargain. That afterwards on the twenty-first day of February, 1894, she paid defendants on account of such bargain and sale, the sum of ninety dollars. That afterwards on the twenty-eighth day of February, 1894, she paid the defendants on account of such bargain and sale, the sum

of one hundred and ninety-five dollars. That in the meantime plaintiff paid for defendants the sum of three dollars for an abstract of title to said lands, which defendants had agreed to furnish. That on or about February, 1894, the plaintiff at the instance and request of the defendants, and in company with them went to said Thomas L. King and assumed the payment of said mortgage, and obtained from said King an extension of one year's time in which to pay the same, which arrangement was satisfactory to all the parties concerned.

"That afterwards on the fifteenth day of May, 1894, the defendant, Mary Mayer, came to the city of St. Joseph, Missouri, where the plaintiff lived, and there on the same day, made and acknowledged and delivered to the plaintiff a general warranty deed to such lands, at which time plaintiff paid to said defendant Mary the sum of seventy dollars, and also paid for said defendant Mary the sum of one dollar and fifty cents, the fee for drafting and taking the acknowledgment to said deed. That on the next day, May 16, 1894, the plaintiff went from the said city of St. Joseph to the city of Stewartsville, DeKalb county, Missouri, and took said deed there in order to have same executed by the defendant, Otto Mayer. That on said day said defendant Otto did sign said deed and acknowledge the same before Benjamin Clark, a notary public of DeKalb county, Missouri. That said deed was left in the possession of the said notary for a time sufficient to endorse thereon and certify his official certificate of the fact of such execution, and acknowledgment by said defendant Otto, and in the meantime the plaintiff left said notary's place of business.

"That in a short time plaintiff returned to said notary, expecting to receive said deed, and was informed by said notary that during plaintiff's absence, the defendant, Mary Mayer, had called for said deed and that he had given it to her. That on the same day, to-wit, the sixteenth day of May, 1894, plaintiff went to the

defendant, Mary Mayer, and requested and demanded of her the delivery of said deed to plaintiff. That there and then the said defendant Mary refused to deliver said deed to plaintiff and has ever since refused so to do, and has since destroyed said deed by burning the same.

"That plaintiff often afterwards demanded said deed from the defendants, but at all times the defendants refused to deliver the same, or to deliver the possession of such land to plaintiff or to her husband, William Clay, or to return to plaintiff the money she had paid defendants for such land. That when plaintiff found that she could not obtain her deed to said land, and that defendants were determined to defraud her out of the land and also keep the money she had paid them for the same, she, on or about July, 1894, went to the said Thomas L. King and purchased the said mortgage he held against said land and at plaintiff's request said King assigned said mortgage to plaintiff's agent and trustee, one G. E. Gleason, who, afterwards, as such assignee advertised said lands to be sold under the terms of such mortgage, on the eighteenth day of August, 1894, so that the plaintiff might obtain title to said lands. But before the day of such sale the defendants to further consummate their fraudulent designs to cheat and defraud the plaintiff out of the title to said lands, paid the amount of such mortgage to plaintiff's agent and trustee, said G. E. Gleason, and prevented such sale.

"That on or about the fifteenth day of June, 1895, plaintiff's husband, William Clay, under the advice of his attorneys, instituted in the circuit court of DeKalb county, Missouri, against defendants, a suit in ejectment for the possession of said lands, joining the co-plaintiff with himself, this plaintiff, who was then his wife. That said action was tried in said court at the October term thereof, 1895, and judgment rendered in favor of the defendants upon a demurrer to the evidence

on the part of plaintiffs, on the ground that ejectment was not the proper remedy.

"That said judgment was affirmed in the Supreme Court of Missouri in or about the month of June, A. D. 1898. That during all of the times herein mentioned and set forth, and until the month of February, A. D. 1900, plaintiff was a married woman and the wife of William Clay, but that the plaintiff is now single and unmarried, having been granted a divorce from said husband. Plaintiff further states that defendants are still in possession of such land, and have always refused to surrender the same to plaintiff, and have kept all of the money she paid them for same. That the yearly value of the rents and profits of said land is the sum of one hundred dollars. The plaintiff has no adequate legal remedy to obtain her just rights.

"Wherefore, plaintiff prays that this court will take an accounting between plaintiffs and defendants, and charge defendants with the rents and profits of said land from the first day of June, 1894, together with the money plaintiff paid for putting in the crop of 1894, and allow them credit for the amount of said mortgage, and to render a judgment or decree, vesting the title to said land in the plaintiff upon the payment of such sum, if any, found due to the defendants, and plaintiff prays for all further and other relief meet and proper in the premises."

The demurrer interposed is as follows: "Come now the defendants in the above-entitled cause and demur to the petition of the plaintiff herein for the following reasons, to-wit:

"1. Because the petition fails to state facts sufficient to constitute any cause of action whatever against these defendants.

"2. Because the petition above shows on its face that plaintiff is not entitled to the relief prayed for against these defendants or to any relief whatever as against them."

This is the second appearance of this controversy in this court. When the defendants refused to execute the deed and refused to deliver possession of the land, Mr. and Mrs. Clay brought suit in ejectment for the land against Mr. and Mrs. Mayer. The trial court sustained a demurrer to the evidence, and the plaintiffs appealed to this court, where the judgment was affirmed. [Clay v. Mayr, 144 Mo. 376.]. The facts as they then appeared were substantially the same as they now appear in the petition, except that it then appeared that Mr. Mayer purchased the land in 1886 with money which came to Mrs. Mayer from her father's estate, and except further that it then appeared that Mrs. Mayer refused to deliver the deed after it was executed because she claimed, first, that there were twenty dollars still due on the purchase price, and afterwards claimed that there were two hundred and fifteen dollars due, and except that the purchase of the mortgage by Mrs. Clay, the proceedings to foreclose it and the payment of it by the Mayers, and the divorce of the plaintiff from her husband did not then appear.

The defendants contend that the petition does not disclose whether or not this land is the separate property of Mrs. Mayer, and if so whether it was acquired before or after the enactment of the Married Woman's Act of 1889 (sec. 6864, R. S. 1889), and claim that, under the authority of McReynolds v. Grubb, 150 Mo. 352, and prior cases, the land was not her separate property if acquired by inheritance prior to the enactment of said Married Woman's Act, and therefore she could not contract with reference thereto, even since the passage of that act, and hence an action for specific performance of the contract will not lie against her.

When the case was here on former appeal it appeared that Mr. Mayer purchased the land in January, 1886, with money which Mrs. Mayer received from her father's estate. The petition in this case only states that the defendants, who are alleged to be husband and

wife, were the owners of the land on January 27, 1894, and that on that day they contracted to sell it to the plaintiff.    That was after the Married Woman's Act went into effect.    That act declares that: ''A married woman shall be deemed a *femme sole* so far as to enable her to carry on and transact business on her own account, to contract and be contracted with, to sue and be sued, and to enforce and have enforced against her property such judgments as may be rendered for or against her, and may sue and be sued at law or in equity, without her husband being joined as a party,'' etc. [Sec. 6864, R. S. 1889.]

The cases of Gwin v. Smurr, 101 Mo. 550; Rush v. Brown, 101 Mo. 586; State v. Clay, 100 Mo. 571; Craig v. Van Bebber, 100 Mo. 584; and McReynolds v. Grubb, 150 Mo. 352, are relied on by the defendants as authority for the proposition that an action for specific performance will not lie against a married woman, but that her property can only be divested out of her by a deed executed by her and her husband in the manner provided by the statute in reference to the conveyance of real estate.    In all of the cases cited the contract sought to be specifically enforced was executed by the married woman prior to the enactment of the Married Woman's Act of 1889.

The extent of the change of a married woman's status in consequence of the act of 1889 (sec. 6864, R. S. 1889), has undergone adjudication by this court in Brown v. Dressler, 125 Mo. 589.    In that case this court, per Brace, J., said: ''Under its provisions a married woman may transact any business on her own account, may make any contract with respect to her property, whether it be real, personal or mixed, and all such contracts, being otherwise valid, will be alike binding on her and on those with whom she contracts and may be enforced in the courts.    Like a *femme sole,* she may buy, sell and pledge her real estate, as well as any other species of her property, but there is one thing which

neither she, nor a *femme sole,* can do, and that is to convey her real estate except by deed in writing duly executed as required by statute. The section under consideration does not undertake to confer the power upon a married woman to convey her real estate; but as a *femme sole* can buy land and give a lien on it, it empowers a married woman so to do. As a *femme sole* can contract a debt upon the faith of her real estate and pledge it as security for the payment of a debt, it empowers a married woman so to do. As a *femme sole* can enter into a written contract for the sale of her land, so now can a married woman. All these contracts will be enforced by the courts under the provisions of the section of the statute.''

And it is no longer material whether her tenure to the land be as a separate or mere legal estate. Her power to contract with reference to it is the same, and the power of the courts to enforce her contracts with reference to it is the same, without regard to the character of her title or her estate therein. It is only necessary that the contracts should have been made since the passage of the act of 1889.

The petition alleges that the contract was made in 1894, which was after the passage of the Married Woman's Act of 1889, and that the plaintiff had paid to the defendants the full contract price to be paid to them, and had assumed the mortgage and obtained a year's extension thereof from the holder thereof, and that the defendant refused to convey the land. The petition, therefore, stated a good cause of action against the defendants for a specific performance of contract generally. But there is one averment in the petition which destroys what would otherwise be a good case. It is that after the defendants refused to convey the land, the plaintiff, on or about July, 1894, purchased the mortgage from the holder thereof and had it assigned to one Gleason, as the plaintiff's agent, and plaintiff caused said Gleason to proceed to foreclose the mort-

gage on August 18, 1894, and that before the day of sale the defendants paid the mortgage. Now the contract alleged was that the defendants would sell the land to the plaintiff for seven hundred dollars, of which the plaintiff was to pay the defendants $359.50, and the balance of the purchase price, to-wit, $340.50, was to be paid to extinguish the mortgage on the land. The plaintiff paid the defendants the $359.50, but the plaintiff did not pay the mortgage. On the contrary the plaintiff purchased the mortgage in the name of Gleason, and caused him to proceed to foreclose it, when the defendants paid the same, and plaintiff thereby got back the money she had expended in buying the mortgage. Her contract with the defendants, according to her averments in her petition, was to pay the mortgage. Instead of so doing she pursued such a course as forced the defendants to pay it. She has failed to show a performance of the contract on her part, and, therefore, she is not entitled to have the contract performed by the defendants. And it is no answer to this, that the defendants were first at fault in refusing to convey. She must show a clear right on her part in addition to showing a wrong on the defendant's part.

The plaintiff is not entitled to a decree for a specific performance, for the reasons given. [Craig v. Van Bebber, 100 Mo. l. c. 589; Baker v. Clay, 101 Mo. 553.]

But as she has paid the defendants $359.50 in money it would be inequitable to allow them to retain the same. Therefore, as a court of equity once acquiring jurisdiction of a case has power to do complete justice between the parties, the judgment of the circuit court will be reversed and the cause remanded to that court with directions to that court to overrule the demurrer and to try the case, and if the facts appear that the plaintiff has paid said money, to enter a judgment in favor of the plaintiff and against the defendants for $359.50 with interest thereon at the rate of six per cent

per annum from June 1, 1894, and for all the costs in the case and to charge the land with a lien therefor.

All concur.