HUBERT   M.   HARVEY, Appellant,   v.   JAMES LONG. 

In Bánc, July 2, 1914.

1. **SUIT IN EQUITY:** Findings of Fact: Appeal.   Where the pleadings are purely equitable and frame no issues of fact to be tried by a jury, they must be tried by the court, and, it being the duty of the Supreme Court upon appeal in such case to examine the evidence and draw its own conclusions of fact as well as of law, a failure of the trial court to make special findings is not prejudicial error.

2. **DEED:** Delivery: Husband and Wife: Husband Retaining Possession of Conveyance to Wife.   A husband had conveyed certain of his lands to his wife.   Afterward, being embarrassed financially, he thought he saw an opportunity to sell the tract he had conveyed to her, and he promised that if she would sell he would deed to her the land now in controversy.   Her land was finally sold for $9600, of which sum about $2000 was applied to her use.   Her husband then made and acknowledged a deed to the wife for the land he had promised her, and took the deed home, as she says, and read it to her, but she did not accept it because it wasn't "just the way she thought it ought to be."   Two witnesses testified that afterward the husband told them he had conveyed the land to his wife.   Immediately after the husband's death a friend of the family, after a talk

with the widow, pried open the deceased's desk, took therefrom the deed and gave it to the widow, who had it recorded. She afterward sold and conveyed the land to the defendant and appropriated the purchase price to her own use. Her son brings suit against the defendant to quiet title. *Held*, that the defendant must prevail, the evidence showing a sufficient delivery of the deed to the wife. [GRAVES, J., dissents in a separate opinion, in which WOODSON and BOND, JJ., concur.]

Appeal from Saline Circuit Court.—*Hon. Samuel Davis*, Judge.

AFFIRMED.

*Hubert M. Harvey pro se; R. P. Spencer* and *Morton Jourdan* for appellant.

(1) Plaintiff's request for written findings of fact and conclusions of law having been made at the close of the evidence and before judgment was improperly refused. R. S. 1899, sec. 695; R. S. 1909, sec. 1971; German-Am. Ins. Co. v. Trimble, 86 Mo. App. 546; Bailey v. Emerson, 87 Mo. App. 220; Fahy v. Grocery Co., 57 Mo. App. 73. (2) The deed from plaintiff's father, Hubert M. Harvey, Sr.; to defendant's grantor was never delivered. Huey v. Huey, 65 Mo. 689; Turner v. Carpenter, 83 Mo. 333; Tyler v. Hall, 106 Mo. 313; Mudd v. Dillon, 166 Mo. 110; McNear v. Williams, 166 Mo. 358; Maddox v. Gray, 75 Ga. 452; Hayes v. Boylan, 177 Ill. 409; Walls v. Ritter, 180 Ill. 616; Cook v. Brown, 34 N. H. 460; Fisher v. Hall, 41 N. Y. 416; Steffian v. Bank, 67 Tex. 513; Garner v. Risinger, 37 Tex. Civ. App. 378; Lang v. Smith, 37 W. Va. 725; Note to Brown v. Westerfield, 53 Am. St. 550. (3) The deed from plaintiff's father to defendant's grantor was of no effect because not delivered during the life of the grantor. Givens v. Ott, 222 Mo. 395; Dohman v. Schliel, 179 Mo. 593; Miller v. Physick, 24 Ark. 244; Fitzgerald v. Goff, 96 Ind. 28; Old v. Doty, 61 Iowa, 22; Taft v. Taft, 59 Mich. 785; Van Aueringer v. Mor-

ton, 4 Whart. 382. (4) When a deed, though acknowledged, is in the possession of the grantor there is a presumption of non-delivery. Miller v. Eshleman, 43 Leg. Int. (Pa.) 447; Burton v. Boyd, 7 Kan. 17; Hatch v. Hoskins, 17 Me. 391; Patterson v. Snell, 67 Me. 559; Powers v. Russell, 13 Pick. (Mass.) 69; Parrot v. Avery, 159 Mass. 594; Alexander v. De Kernel, 81 Ky. 345. The burden of proving delivery was on respondent, and appellant is not bound to prove non-delivery by evidence of equal dignity as the fact of acknowledgment. Tyler v. Hall, 106 Mo. 313; Burke v. Pence, 206 Mo. 339; Devony v. Koyne, 54 Mich. 118; Shattuck v. Rogers, 44 Kan. 266. (5) The testimony as to admissions of plaintiff's father is of little weight and cannot establish or destroy plaintiff's title. Johnson v. Quarlers, 46 Mo. 427; Kinney v. Murray, 170 Mo. 674; Williams v. Keef, 145 S. W. (Mo.) 425.

*Reynolds & James* and *Duggins & Duggins* for respondent.

(1) It is immaterial that the trial court failed to make any written finding of the facts, as requested by the appellant. This is an equity case; the whole record is before this court. It fully appears therefrom that the appellant, the respondent and the court treated it as an equity suit. The last paragraph of appellant's brief uses this language: "And as this is an equity case and all the evidence is in the record." This court, in commenting upon the case of Blount v. Spratt, 113 Mo. 53, uses this language: "We then held and now hold, that, in equity cases, it is not only the privilege, but the duty of this court to examine the evidence and draw our own conclusions of fact as well as of law." Miller v. McCaleb, 208 Mo. 575; Shaffer v. Dotie, 191 Mo. 387; Fitzpatrick v. Weber, 168 Mo. 572; Patterson v. Patterson, 200 Mo. 340. (2) The deed from appellant's ancestor, Hubert M. Harvey, de-

ceased, to Mary B. Harvey, the appellant's mother, was sufficie t to convey the equitable title to the real estate invol ed, to the said Mary B. Harvey, and upon the death of the said Hubert M. Harvey, the legal title to said land, immediately followed the equitable title, and likewise vested in said Mary B. Harvey. Christ v. Kuhner, 172 Mo. 118; Stark v. Kirchgraver, 186 Mo. 642. (3) The deed of said Mary B. Harvey to the respondent, James Long, conveyed to, and vested in him the full legal title to the land involved in this suit. (4) The question of delivery of the deed is generally one of intention of the parties and may be either actual or constructive. Burke v. Adams, 80 Mo. 504; Sneathen v. Sneathen, 104 Mo. 201; Crowder v. Searcy, 103 Mo. 97; Rumsey v. Otis, 133 Mo. 85; Hamilton v. Armstrong, 120 Mo. 597; Tobin v. Bass, 85 Mo. 654; Coulson v. Coulson, 180 Mo. 715; Standeford v. Standeford, 97 Mo. 231; Rodgers v. Carrey, 47 Mo. 235. A formal delivery is not essential, nor are expressed words necessary. 13 Cyc. 561; 5 Am. & Eng. Ency. Law (1 Ed.), 441. A manual delivery of a deed is not necessary; it being sufficient if it be apparent either from the words or acts of the grantor, that it was his intention to treat the deed as his, and to make a delivery of the same. Authorities above cited: Coulson v. Coulson, 180 Mo. 709. (5) Placing the deed with other papers of the grantor, after delivery to the grantee, coupled with the fact that it could not be found until after the death of the grantor, when it was discovered among his other papers, does not affect the prior delivery. Rumsey v. Otis, 133 Mo. 85; Allen v. Degroodt, 105 Mo. 442; Redd v. Smith, 125 Cal. 491. (6) The delivery may be inferred from a variety of circumstances. It may be inferred from the grantor's acts or declaration made at the time or subsequently thereto; from attendant or subsequent events. 2 Jones on Real Property, sec. 1220. The delivery may also be presumed from the fact that a deed, properly executed and acknowledged

is placed upon record. R. S. 1899, secs. 932, 935, 3123; Burke v. Pence, 206 Mo. 339. The deed in question, in the case at bar, was duly signed, sealed, acknowledged and certified and recorded in the proper county, where the land was situated and thereby imported a delivery as of the date of the deed. Bunnell v. Bunnell, 64 S. W. 424. (7) Again, a delivery of said deed may be inferred from the fact that the grantee dealt with the property as her own, had control of the same, rented it out, collected the rent, mortgaged and sold the same. Land Co. v. Zeitler, 182 Mo. 282. (8) The delivery of said deed is presumed when made in pursuance to a former arrangement or contract, as it is presumed to have the grantee's consent, without a formal delivery and acceptance. 2 Jones on Real Property, sec. 1280; 13 Cyc. 730; Allen v. De Groodt, 105 Mo. 442; Everett v. Whitney, 55 Iowa, 146; Jones v. Swazze, 42 N. J. L. 279. (9) Again, a delivery is more readily presumed in transaction between husband and wife, on account of the relationship existing between the parties. In the case of Rumsey v. Otis, 133 Mo. 95, this court uses this language: "The fact that this deed was afterwards found in the possession of Merrill Otis (the husband), considering the relationship of husband and wife, did not rebut the presumption of delivery to her." (10) Delivery is also presumed from the possession of the deed. In the case at bar, the said Mary B. Harvey, the respondent's grantor, had possession of the deed, and full and complete possession of the land, for over ten years. 13 Cyc. 734; Land Co. v. Zeitler, 182 Mo. 282; Allen v. DeGroodt, 105 Mo. 442. (11) In this great business world we are compelled to rely to a great extent upon presumption. As was said in Gass v. Evans, 244 Mo. 343: "This because: The controlling maxims are: All things are presumed to be legitimately done, until it is proved to the contrary; all things are presumed to be done solemnly. Chlanda v. Transit Co., 213 Mo. 261; 2 Coke, Litt. 6 B. What

ought to be done is easily presumed. Those maxims evidence a rule of convenient public policy universally applied and without which great distress would spring in the affairs of men. They abide until facts proven to the contrary make them take flight. They apply with peculiar force to official acts. Hartwell v. Park, 240 Mo. 537.'' Maien v. Brock, 222 Mo. 84. (12) Considering the facts in the record, and the law bearing thereon, as stated, the respondent, Long, has not only made a prima-facie case of the delivery of the deed, in question, thereby procuring title from Hubert M. Harvey, the appellant's father; but has made a case from which there is no escape, for the appellant. All of the presumption arising from the law and from the facts as shown by the record in this case constitute such evidence as can only be overthrown by clear, countervailing evidence to the contrary. 2 Jones on Real Property, 1290; Burke v. Adams, 80 Mo. 512; Burke v. Pence, 206 Mo. 337; Elliott v. Shepard, 179 Mo. 392; Barrett v. Davis, 104 Mo. 549; Webb v. Webb, 87 Mo. 540; Riecke v. Westerhoff, 10 Mo. App. 358; Morrison v. McKee, 11 Mo. App. 594.

BROWN, C.—Suit begun in Saline County Circuit Court August 12, 1908, to determine the title to a farm of one hundred seventy-odd acres of land in that county. The plaintiff is the son and sole heir of Hubert M. Harvey, who died at his residence in Chicago, Illinois, February 26, 1895, intestate. He was about twenty-two years old when this suit was instituted. Both parties claim under the elder Harvey; the plaintiff as heir and the defendant as grantee in a deed from Mary B. Harvey, the widow of the deceased and mother of the plaintiff. She claimed title by a deed from her husband dated August 12, 1893. The delivery of this deed is the principal issue in the case. The petition was a formal one framed upon section 650, Revised Statutes 1899.

The answer is very long. In addition to the general denial, it pleads, in substance: (1) That the defendant is in an innocent purchaser for value from Mrs. Harvey, having paid $10,875 for the land, and there being no reason to suspect any weakness in her title as shown of record, and believing it to be good. (2) That out of the purchase money he paid liens resulting from money borrowed by Mr. Harvey in his lifetime and secured by deeds of trust executed by himself and wife, as well as like incumbrances placed by Mrs. Harvey after his death. (3) That after Mr. Harvey's death and in 1896 Mrs. Harvey had brought suit in the circuit court for Saline county against the plaintiff and John L. Bolen, the administrator of the estate of Hubert M. Harvey, deceased, and obtained judgment vesting in her the legal title to the land. (4) That if the deed from Mr. Harvey and his wife had not been delivered, it had fallen into the hands of Mrs. Harvey by the negligence of the grantor so that his heir is estopped from denying its complete execution. (5) That the deed from Harvey to his wife was made in pursuance of a contract then fully executed on her part whereby she had conveyed to him, or to another at his direction, her own farm of one hundred sixty acres, in consideration of his promise to convey to her the land in question. It asked equitable relief upon the facts so stated.

The reply, with considerable detail, puts in issue the matter specially pleaded in the answer.

The question of the delivery of the deed grows out of the following facts which are not disputed. About eleven o'clock on the morning of Mr. Harvey's death Mr. John L. Bolen, who had been a neighbor of the family in Missouri, and was the nearest business friend and adviser of Mrs. Harvey after the death of her husband, received a telephone message from the physician that Mr. Harvey had just died and asking him to come to the house. He went out there, where he met Mrs.

Harvey and the doctor, and one or two neighbors. He talked with her about the Missouri land, and she told him about this deed. He said she should have it recorded. He went down to Mr. Harvey's office, forced open his desk, not having a key, and got out all his private papers including the deed in question, and took them to Mrs. Harvey's house; and at her instance sent the deed to Marshall, Missouri, for record.

The circumstances affecting the making of this deed as disclosed in evidence are as follows: Mr. Hubert M. Harvey was a lawyer who resided in Marshall, Saline county, Missouri. He owned two farms in that county, one of them the land involved in this suit, and the other 160 acres lying near it. In April, 1890, he determined to remove to Chicago. His wife did not want to go. She consented, however, but before going she wanted him to deed her some land, and on April 19 he conveyed to her the 160-acre tract through one Burruss as a conduit of the title. He went to Chicago during the same month and she followed him in September of that year. Law practice did not come to him with alacrity in his new home. He undertook to speculate in real estate in north Chicago and ran behind in it. He lost some property by foreclosure and in the summer of 1892 desired very much to raise money. At that time he thought he saw an opportunity to sell Mrs. Harvey's land and promised that if she would sell he would deed her the land in controversy. It was a slow sale and in July, 1892, he borrowed $7000 from J. P. Huston, he and his wife giving their note therefor secured by mortgage on both tracts of land. The note ran five years at seven per cent. interest. During that year he succeeded in negotiating a sale of Mrs. Harvey's quarter section to one Blackburn, conveying to him on January 5, 1893, by warranty deed for $9600. Out of this, after paying the Huston loan and interest and expenses he had a little more than $2000. Of this $500 was given to Mrs. Harvey. He invested $1000 for

her in stock which afterward proved to be worthless. The remainder was expended in repairing a house they had purchased on the south side, taking the title in Mrs. Harvey's name, and which she desired to be in condition to rent during the Columbian exposition, which she did, receiving $1500. as rental. This house was purchased after the return of Mrs. Harvey from a visit to Missouri in 1892, $2500 being paid on it. Where this money came from—whether from the sale of a house they had previously purchased in north Chicago or from the Huston loan or other funds—does not appear. It does appear, however, that this cleaning up did not put an end to Mr. Harvey's financial necessities, the title to the remaining tract, the one now in controversy, being strewn with evidences of his need for money. She joined with him in a deed of trust given December 12, 1893, to secure the payment of their note for $2000 borrowed from George A. Murrell, and also in a like deed dated April 12, 1894, to secure payment of his note for $382 borrowed from D. N. Burruss. These were unpaid at the time of his death. After his death Mrs. Harvey seems to have taken care of them. The note to Burruss was paid June 1, 1895, and on April 15, 1896, she made a deed of trust of this land to secure $2500 borrowed from Thomas R. Lawless and Mary J. Woodson and the Murrell note was then paid. This was satisfied in its turn from money realized from a loan of $3250 from John B. Henderson secured by deed of trust on the same land. This last mentioned deed of trust was also satisfied on May 15, 1903, out of the proceeds of a loan of $5000 from the Prudential Insurance Company of New Jersey, and this and a second mortgage for $1568.93 to the Farmers Savings Bank of Marshall, Missouri, made November 16, 1905, were satisfied by the defendant as a part of the purchase price of $10,875 paid Mrs. Harvey for the land.

Mrs. Harvey seems, after her husband's death, to have taken up the education of her boy. She kept a boarding house in Columbia for five years while he attended the Missouri State University, graduating from the law department just before the bringing of this suit.

In addition to the undisputed evidence that the deed in question was prepared by Mr. Harvey in pursuance of an agreement with his wife that he would convey the land in controversy to her, two witnesses testified directly that Mr. Harvey had stated to them, in substance, that he had conveyed the land to his wife. Mrs. Harvey's statement of the facts relating to the delivery of the deed is as follows:

"Q. Do you remember when it was made? A. Yes, sir.

"Q. Did your husband deliver it to you at that time? A. No, sir.

"Q. Did he offer to give it to you? A. He brought it out to me and read it to me. I was getting dinner at the time. He read it aloud to me and I told him I didn't like it.

"Q. Did you accept it when he offered to give it to you? A. No, sir, I didn't want it that way; it wasn't just the way I thought it ought to be.

"Q. Why didn't you accept it, Mrs. Harvey? A. Well, I don't know anything about deeds, but before we moved to Chicago, understand Mr. Harvey went there in April, 1890, but I didn't want to go and didn't go until September, and before I went I wanted him to deed me some land. I didn't want to go to Chicago, so he deeded me that 160 acres sold to Mr. Blackburn. He deeded that land to my brother, and my brother deeded it to me; then when he deeded this land I wanted him to deed it to somebody so they could then deed it to me, and so I wouldn't take this deed that way.

"Q. Because it was made directly to you instead of to a third party? A. Yes, sir."

I.   The appellant has assigned for error that the court refused, in disregard of the request of plaintiff made after the close of the evidence at the trial, and before judgment, to state in writing his conclusions of facts found separately from the conclusions of law.

**Suit in Equity: Findings of Fact: Appeal.**

The petition asked no relief excepting the purely equitable one that his title be established and quieted as against the defendant. The special defenses of the answer look solely to the distinctively equitable remedies of subrogation, specific performance and equitable estoppel. Applying the more definite and conclusive test of our code of civil procedure by which these pleadings must be judged, they frame no issue of fact to be tried by a jury (R. S. 1909, sec. 1968), but must be tried by the court unless it elect to take the opinion of a jury upon some specific question of fact. [Id., sec. 1969.]

It is now firmly settled by the adjudications of this court that in such cases, it being our duty to examine the evidence and draw our own conclusions of facts as well as of law, a failure of the trial court to make special findings is not prejudicial error. [Blount v. Spratt, 113 Mo. 48; Miller v. McCaleb, 208 Mo. 562, 575; Walther v. Null, 233 Mo. 104, 110, 134; Kuczma v. Droszkowski, 243 Mo. 57, 61.]

II.   The real question in the case arises upon the delivery of the deed from Mr. Harvey to his wife. In coming to the consideration of this we are met at the first step by the relationship of the parties. They are husband and wife; members of a single family of which he is, in contemplation of law, the director and head. They are the natural agents, each of the other, in the performance of the duties of their respective positions. It would exhibit the same superfluity of caution in the wife of a

**Deed from Husband: to Wife: Retained in His Possession: Delivery.**

business man to keep a strong box of her own for the safe keeping of her important papers, as for a man to keep in office or kitchen a separate repository in which he might personally control the food provided for the idiosyncrasies of his own palate. Care and watchfulness of her property interests come as naturally within his province, as do care and watchfulness of the menage within hers. Paraphrasing the oath of *The Three Musketeers*, it is, in their relation, both for one, one for both. This relation ought to be and is considered in determining whether a deed remaining in the physical custody of the grantor husband has been delivered to the wife. [Rumsey v. Otis, 133 Mo. 85, 96.]

Our statute (Sec. 2818, R. S. 1909) provides: "Every instrument in writing, conveying or affecting real estate, which shall be acknowledged or proved, and certified as hereinbefore prescribed, may, together with the certificates of acknowledgment or proof, and relinquishment, be read in evidence without further proof."

It is but giving effect to the ordinary meaning of these words to say that they make the certificate of acknowledgment required by statute prima-facie evidence of every element necessary to constitute the due execution of the deed including both its signing and delivery to the grantee. This is surely reasonable, for it is the official record of the solemn and contemporaneous admission of the grantor to that effect, than which there can be no higher evidence, not even that of a disinterested witness who saw the acts. This has been frequently asserted by this court. [Parkinson v. Caplinger, 65 Mo. 290, 294; Burk v. Pence, 206 Mo. 315, 339; Barbee v. Bank, 240 Mo. 297, 306.] In addition to this presumption we have the testimony of those to whom Mr. Harvey said, in substance, that he had conveyed the land to his wife, and the fact proven and admitted in argument, that he had promised to do so for a consideration fully executed on her part.

It has frequently been held that to constitute a delivery it is not essential that the deed be actually transferred. In Bunnell v. Bunnell, 64 S. W. 420, 424, the Court of Appeals said: "If the grantor, when executing it, intends it as a delivery, and this is known to and understood by the grantee, and they treat the estate as having actually passed thereby, it will have that effect though the instrument be left in the possession of the bargainor. [Washb. Real Prop. 261; Cecil v. Beaver, 28 Iowa, 241; Tobin v. Bass, 85 Mo. 654; Gould v. Day, 94 U. S. 405.] Delivery may be shown by acts without words, or words without acts, or by both combined. [Hughes v. Easten, 4 J. J. Marsh. 573; Shoptaw v. Ridgway (Ky.), 60 S. W. 723; Martin v. Bates (Ky.), 50 S. W. 38; Ward v. Small, 90 Ky. 198." This court has also contributed several well considered declarations to the same effect. [Allen v. DeGroodt, 105 Mo. 442; Standiford v. Standiford, 97 Mo. 231, 239; Crewder v. Searcy, 103 Mo. 97, 118, citing Cannon v. Cannon, 26 N. J. Eq. 316; Burke v. Adams, 80 Mo. 504.] In the case last cited, the rule is clearly stated by Philips, C., as follows: "The intent to convey is evidenced by the act of making out and duly executing and acknowledging a deed. The delivery may be evidenced by any act of the grantor by which the control, or dominion, or use of the deed is made available to the grantee. It is not necessary it should be handed over actually to the grantee, or to any other person for him. It may be delivered under certain circumstances, though it remain in the possession of the maker." In the case last above cited the learned Commissioner quotes from the language of Judge Spencer in Jackson v. Phipps, 12 Johns. 421, as follows: "This delivery must be either actual, by doing something and saying nothing, or else verbal, by saying something and doing nothing; or it may be both; but by one or both of these it must be made; for otherwise, though it be never so well sealed and written, yet

is the deed of no force." In the same case he quotes from Burt v. Cassety, 12 Ala. 734: "It is of no importance whatever that the vendee was not present when the deed was made. She is presumed to assent to it as the deed was for her benefit." The same idea has been approved by this court (Crowder v. Searcy, supra) in a quotation from Bryan v. Wash, 2 Gilm. 568, in its application to conveyances by those standing in a confidential relation to the grantee, as follows: "It must be remembered, that the law presumes much more in favor of the delivery of deeds in case of voluntary settlements, especially when made to infants, than it does in ordinary cases of bargain and sale. The same degree of formality is never required, on account of the great degree of confidence which the parties are presumed to have in each other, and the inability of the grantee, frequently, to take care of his own interests. The presumption of law is in favor of the delivery, and the burden of proof is on the grantor to show clearly that there was no delivery. It was so adjudged by Chancellor KENT, in the case of Souverbye v. Arden, 1 Johns. Ch. 255, where he says: 'A voluntary settlement, fairly made, is always binding in equity upon the grantor, unless there be clear and decisive proof that he never parted, or intended to part, with the possession of the deed, and even if he retains it, the weight of authority is decidedly in favor of its validity.' " And if the deed is delivered without the transfer of possession to the grantee and without his acceptance, expressed or implied, such acceptance relates to the making of the deed which becomes valid *ab initio*, and as said by this court in Rumsey v. Otis, supra (p. 95): "The delivery itself is only intended to evidence the purpose of the grantor to give effect to the instrument, and the law presumes much more in favor of a delivery in cases of voluntary settlements in favor of a wife, child, or near relative than it does in ordinary cases of bargain and sale between strangers."

"The delivery of a deed, so far as the grantor is concerned, is a matter of intention, and where the intention clearly appears, the act in pursuance thereof will be construed to constitute a delivery." [Coulson v. Coulson, 180 Mo. 709, 715.] It is hardly to be expected that these acts will be the same in any two cases. That Mr. Harvey intended to convey the land in question to his wife so far as the terms of this deed would accomplish that object cannot be doubted. That Mrs. Harvey accepted and acted upon that theory, and appropriated to herself all the benefits that could result from it, even to the extent of appropriating to her own use the money paid her for the land by the defendant, is equally true. There can be no more solemn, or, from a moral standpoint, more irrevocable admission that she had accepted the deed and thereby became the owner of the land than this. She says also that the money she received has been spent, so that she cannot return it to the purchaser from whom she has taken it. There is much authority as well as reason for the doctrine that these acts of themselves constitute an acceptance of the deed which relates back to the time of its signing and acknowledgment notwithstanding the intervening death of her husband. The appellant disputes this. He says that unless her title under the deed was complete before the occurrence of that event, the doctrine of relation affords no bridge over which the acts occurring on either side may pass and mingle with each other. Accepting this statement without expressing any opinion upon the question so presented, we will consider whether or not the evidence establishes the delivery of the deed in the lifetime of the grantor. We have already seen that the acknowledgment raises a legal though rebuttable presumption of its complete execution by signing and delivery, including its acceptance by the grantee, so that it may be introduced in evidence as complete without further proof of any of those facts. Added to this are the admissions of the

grantor against his own interest, that he had parted with the title to the land by conveyance to his wife. Then we have the sworn statement of Mrs. Harvey that she knew of its execution; that he both showed it and read it to her, offering it to her at the same time. Then comes the fact which does not depend upon disputable evidence and which furnishes the ground and substance of this case, that Mrs. Harvey assumed that the deed and the land were hers, by taking possession of it as against this plaintiff heir and holding it and selling it. We have seen that as between husband and wife the rule is peculiarly applicable that the delivery of a deed may lie in the intention of the husband while the instrument still remains in his possession. Although this rule has been generally applied in cases of voluntary settlements, the reasons supporting it becomes still stronger where the deed rests upon a valuable consideration lending its weight to the presumption. For this reason it is unnecessary that we should enter upon the intricate question of what became of the money realized from the sale of Mrs. Harvey's quarter section.

Against this evidence, aided by the presumption which the law interposes to prevent injustice being done by the concealment of the actual facts, the plaintiff interposes the theory that the preparation of this deed was what might be called in the American dialect a "bluff" on the part of Mr. Harvey; the implication is that he did not expect it to be accepted in the form in which it was prepared, nor was he willing to induce her acceptance by conveying the land through a trustee constituted for that purpose; that Mrs. Harvey had declined, for the anticipated reason, to accept it until she discovered that by the death of her husband she could use it to deprive her son of the land. It is true her attorneys suggest that she adopted this course so that she could handle the title for the benefit of the child without having to do so through the expensive

process of administration and guardianship, but this explanation must be without merit, for there is no suggestion that the purchase money was appropriated to the use of the plaintiff, nor is there any offer to return any part of it to the defendant. It is also suggested that there is some significance in the fact that Mrs. Harvey joined with her husband in borrowing $2000, for which they gave their joint note secured by deed of trust upon the land in controversy, and that she also joined with him in the execution of a deed of trust on the same land to secure another note to her brother, Mr. Burruss, for $382. Both these transactions were after the date of the deed in question and the notes remained unpaid at the time of his death. We see no significance in this other than is suggested by the testimony of Mr. Bolen, to the effect that Mr. Harvey was embarrassed in business and needed money. Under these circumstances it would be natural for a good wife to do what she could to help him. We can also understand the hesitation of both in their embarrassed circumstances, to place of record a deed conveying to the wife so considerable an item of property available for the payment of his debts.

The security and commercial availability of land titles, and the protection of innocent purchasers of such property against fraud and imposition, require that their visible muniments bear the facts relating to their condition, as far as possible, upon their face. For this reason conveyances of such property are required by law to be written, and to carry with them written evidence of their due execution. It would defeat the object of these requirements could the evidence so constructed be overthrown by anything less cogent and convincing than itself. In Elliott v. Sheppard, 179 Mo. 382, 392, we said: "This court, in a number of cases, has spoken in no uncertain terms as to the nature and character of the testimony which will warrant the overthrow of the force and effect of a deed, duly acknowl-

edged, all of which appears regular upon its face. The expressions of this court as well as the other appellate courts are uniform—that to warrant the finding that such deed and certificate of acknowledgment is untrue, the evidence must be clear and satisfactory. [Barrett v. Davis, 104 Mo. 549; Webb v. Webb, 87 Mo. 540; Riecke v. Westenhoff, 10 Mo. App. 358; Morrison v. McKee, 11 Mo. App. 594; Brocking v. Straat, 17 Mo. App. 296.]'' To fill this requirement we have the statement of Mrs. Harvey that she refused to accept this deed. On the other hand we have the fact that, pretending to accept it, she sold the land which it represented, and appropriated the money, which she is unable to return. Her earlier act found its incentive in obtaining for herself what should have gone to her son. Her present testimony is to the end that the purchaser whom, if it be true, she deceived, be made to pay her son that which she should in conscience be made to pay him herself. Is there any question which of these things we are required by the law as well as by good morals to believe? As we have already said her present statement is bare of support in the record. Even her reason for rejecting the deed when offered to her stands upon slippery ground. Being a legal opinion, we would expect her to have asked a lawyer whether or not it was well founded. For this reason we cannot keep out the mental suggestion that the thought came to her too late to be available for that purpose. This transaction was had only a few years after the passage of the Married Woman's Act of 1889, which struck from our legal system the ancient fiction of the common law that husband and wife were one, and could not therefore be separated into the two parties necessary to a contract, and places them on an equality in that respect and gives to the wife all the rights with reference to the separate ownership of lands that she had theretofore enjoyed with reference to the ownership of personal property. This court has uniformly

held that under its provisions she can contract freely with her husband with respect to all kinds of property, including lands, and that they could enforce such contracts against each other at law as well as in equity. [Rice, Stix & Co. v. Sally, 176 Mo. 107, 130; O'Day v. Meadows, 194 Mo. 588; Bower v. Daniel, 198 Mo. 289, 320; Bank v. Hageluken, 165 Mo. 443; Kirkpatrick v. Pease, 202 Mo. 471, 490.] While before 1889 the contract of a married woman for the sale of land could not be enforced (Clay v. Mayer, 183 Mo. 150), their contracts since that time have stood upon the same footing as those of other persons.

The single exception in this line of adjudications is Christ v. Kuehne, 172 Mo. 118, in which, while the question did not arise, as it made no difference whether the wife took a legal or equitable estate by the conveyance involved, the court, for convenience, adopted the view of the appellant that the estate was an equitable one. The effect of the Married Woman's Act as it then existed was not noticed.

Under all the facts and circumstances in this case we hold that the testimony of Mrs. Harvey was not sufficient to overcome the prima-facie case arising from the duly acknowledged deed together with the other circumstances in evidence. The judgment of the Saline Circuit Court must accordingly be affirmed.

*Blair, C.,* concurs.

PER CURIAM.—This case, having been concurred in in Division by BLAIR, C., and sent into Banc on dissent of two of the brethren, was reheard, and the opinion of BROWN, C., was adopted as that of the court. *Lamm, C. J.,* and *Brown, J.,* concur. *Walker* and *Faris, JJ.,* concur in the result. *Woodson* and *Bond, JJ.,* dissent. *Graves, J.,* dissents in an opinion filed.

## DISSENTING OPINION.

GRAVES, J.—I do not concur in the opinion of our learned Commissioner in this case, nor in the result thereof. I think the evidence in this case disproves the delivery of the deed from the husband to the wife. There is no substantial evidence in this case to show that the husband parted with his dominion over this deed in his lifetime. On the contrary the deed was locked in his private desk with his private papers, and this desk had to be broken open by a stranger, before the wife got possession of the deed. Grant it (without discussion or decision) that from the signing and acknowledgment of a deed there is a presumption of delivery, yet such presumption is a rebuttable presumption, and in my judgment is thoroughly rebutted in this case, by the single undisputed and unexplained fact (unexplained if we exclude the evidence of the wife) that the deed was locked up in the husband's office with his own private papers. If ever a man maintained dominion over a deed this husband had dominion up to the moment that death claimed him. Not only so, but had matters taken the usual channel, this deed would have fallen into the hands of an administrator rather than into the hands of the wife.

Our Commissioner stresses the point that the wife's conduct disproved her evidence at the trial. Grant this to be true, and it would allow us to reject her testimony from the case, as being unworthy of belief, and would not in anywise bridge the chasm in this title made by the undisputed proof of the fact that the husband held dominion over this deed to the hour and minute of his death. The potency of the fact that this deed was never recorded, and remained in the possession of the husband, cannot be wiped out of this case, however much we question the veracity of the wife. In fact, we doubt whether she was in law competent to testify to some of these matters, but if she were, and even testified

falsely, the undisputed fact of where this deed was found disproved delivery by the husband and disproves that he had parted with dominion over it.

In some ways this is a harsh case for the defendant, yet he is not without some fault. There is enough in the chain of his title to have placed a prudent man upon inquiry. Proper inquiry might have revealed the true status. In his chain of title was this decree in the case of the wife against her infant son. The petition in that case had it been examined, with the knowledge that there was no proper service upon the infant, would have furnished food for thought and inquiry. Not only so, but we find in the same chain of title deeds of trust upon the property by the husband and in the name of the husband after the date of this deed, a circumstance suggestive when it appeared that the deed was not recorded until after the death of the grantor. So that whilst the defendant might be called innocent in fact he is not innocent in law. He was bound to follow proper inquiries suggested by the matters properly within the chain of his title.

In my judgment this judgment should be reversed, and the judgment should be for plaintiff as to the title in this land but the defendant should be subrogated to the rights of some of the lienors who had their liens discharged by his money. The widow's dower might have to be reckoned with to some considerable extent also. It is clear that the plaintiff should not have this land cleared of the liens placed thereon by the act of the father prior to his death. I have considered this case from all angles since the promulgation of the opinion by our learned Commissioner, and am convinced that we are treading upon dangerous ground, when we hold, as the majority opinion does, that there was a delivery and acceptance of the deed in the lifetime of the grantor. For this reason I dissent. *Woodson* and *Bond, JJ.*, concur in these views.