GEORGE W. KIRBY, JR., Appellant, v. BANK OF DEARBORN ET AL.—
19 S. W. (2d) 1043.

Division One, July 30, 1929.

*Terrence Riley* and *Eastin & McNeely* for appellant.

*James H. Hull* and *German, Hull & German* for respondents.

RAGLAND, J.—This is a suit to set aside and cancel a deed of trust, alleged to constitute a cloud on plaintiff's title to twenty acres of land, situate in or adjoining the town of Dearborn, in Platte County.

The deed records of Platte County purport to show the following facts with reference to the title in question. On February 22, 1922, William H. Gabbert and wife, he being then the owner of the title in fee simple, executed a deed of trust on the land to secure to the Bartlett Bros. Land & Loan Company the payment of a note of even date for $2500. On March 16, 1922, Gabbert and wife gave a deed of trust on the same and other land to secure to one Drais the payment of a note for $15,000. This latter deed of trust recited: "This deed is made subject to a first mortgage, dated February 22, 1922, to Bartlett Bros. Land & Loan Company to secure a note for $2500." Both deeds of trust were filed for record on the 27th day of March,

1922, the one first mentioned being filed four minutes earlier than the other. On May 12, 1924, the land in question was sold at a foreclosure sale had under the deed of trust given to the use of Drais. Plaintiff was the purchaser; upon the payment of the amount of his bid, $10, the trustee executed to him a deed of conveyance which recited: "This deed is made subject to a first mortgage, dated February 22, 1922, to Bartlett Bros. Land & Loan Company."

By this proceeding plaintiff seeks to have annulled the deed of trust purporting to have been given to the use of the Bartlett Bros. Land & Loan Company on the grounds that it was without consideration and its execution was never completed by delivery.

The Bank of Dearborn (hereinafter called the Bank) closed its doors March 9, 1922. The controversy as to the validity of the $2500 note and deed of trust grows out of transactions had in connection with its attempted reorganization. Two or three months before it was compelled to suspend business the directors passed a resolution assessing the stockholders fifty per centum of their holdings for the purpose of securing enough new capital to continue. Gabbert, who had been cashier for twenty years, owned stock of the par value of $8,000. His assessment, consequently, was $4,000. Of this amount he paid $1500 in cash: for the purpose of securing the funds with which to pay the remainder he applied to the Bartlett Bros. Land & Loan Company (hereinafter called the Loan Company) for a loan of $2500 on the twenty acres of land.

In connection with the negotiations for the loan he signed the note, and he and his wife signed and acknowledged the deed of trust in controversy. These papers had not been delivered but were still in Gabbert's possession at the time the Bank suspended, though the negotiations for the loan were still pending.

An audit of the books disclosed that Gabbert was indebted to the Bank in a considerable sum. Mr. William E. West, a State Bank Examiner, who as representative of the State Commissioner of Finance was in charge of the Bank and endeavoring to effect a reorganization, induced Gabbert to agree to apply on his indebtedness to the Bank the proceeds of the loan he was expecting to obtain from the Loan Company. Gabbert accordingly wrote the Loan Company on March 7, 1922: "Please pay the proceeds of loan being negotiated through you for the sum of $2500 and dated February 22, 1922, to the Bank of Dearborn, Dearborn, Missouri. Said loan having been negotiated for the benefit of said Bank." After some delay the Loan Company declined to make the loan. Thereafter it indorsed without recourse the $2500 note which had been drawn payable to it, and both the note and the deed of trust purporting to secure it came into the possession of the Bank or rather the State Commissioner of Finance who was at that time, and still is, in charge of its affairs and

acting for it. The Bank claims to be the holder of the note and deed of trust, and that they constitute a valid and subsisting lien on the twenty acres of land.

With respect to the indorsement of the note and the Bank's subsequent possession of it and the deed of trust the evidence is conflicting: Gabbert testified that his indebtedness to the Bank was ascertained to be $15,000, for which he gave the note and deed of trust to Drais as trustee for the Bank; that West, who had found the $2500 note and deed of trust among the papers in the Bank, requested his consent to conclude the negotiations for the loan and apply the proceeds thereof when obtained on his, Gabbert's, indebtedness to the Bank; that he gave such consent, but with the distinct understanding that the proceeds of the loan were to be credited on his $15,000 note; that he gave no further directions with respect to the $2500 note; and that he did not know until long afterward that the Loan Company had indorsed it over to the Bank.

According to the testimony of West, the facts were as follows: Gabbert's liability to the Bank was in excess of $23,000. In his efforts to discharge this liability he agreed, among other things, that the then pending negotiations for the $2500 loan should be pressed to a conclusion and the proceeds of the loan paid to the Bank. In addition he and his wife gave a note for $15,000 and a deed of trust (to Drais as trustee) to secure the same, covering all of his property, including the twenty acres of land involved in this proceeding. The $15,000 note was also signed by thirty persons residing in the community, as sureties. To further aid Gabbert in effecting a settlement $5209 in cash was raised by popular subscription and paid to the Bank. When the Loan Company finally declined to make the loan, Gabbert agreed with West that the Loan Company might indorse the $2500 note to the Bank, and that the Bank should take the note and deed of trust in lieu of the proceeds of the loan, as at first contemplated, and this was done. By the greater weight of the credible evidence in the case the facts were as detailed by West, and we so find. Mr. Gabbert on the witness stand said that, owing to the deplorable condition of the Bank's affairs and his own personal involvement therein, he was suffering such great mental distress that many of the things which then took place were inexplicable to him when he afterwards attempted to recall them. That explanation no doubt accounts for the many inaccuracies found in his testimony.

There is no evidence that Gabbert ever made manual delivery of the $2500 note and deed of trust to either the Loan Company or the Bank. He testified that these papers were in his private desk in the Bank when West took charge. As it does not appear that he subsequently removed them or took them into his own personal possession, the inference is that they remained in

the general custody of West. When Gabbert consented for West to complete the negotiations for the loan and receive the proceeds for the Bank, he clearly gave West the implied authority to deliver the note and deed of trust to the Loan Company upon its acceptance of the application for the loan. When, upon the Loan Company's refusal to make the loan, he gave his consent that it indorse the note to the Bank, and that the Bank itself take the note and deed of trust in lieu of the proceeds of the loan, he clearly intended that those instruments should then and there become effective as obligations to the Bank. It is immaterial whether he expressed such consent before, or after, the indorsement was actually made by the Loan Company: the consent was a continuing one and it operated as a delivery of the papers to the Bank the moment they were completed as purported obligations to the Bank by the entry on the note of the indorsement of the ostensible payee.

If West had procured the Loan Company's indorsement on the note and handed the note and deed of trust to Gabbert and Gabbert had then delivered it to West as the agent of the Bank, no question of delivery could have arisen. Such procedure, however, would have been a useless formality. "Actual manual delivery and change of possession are not required in order to constitute an effectual delivery. But whether there has been a valid delivery or not must be decided by determining what was the intention of the grantor. and by regarding the particular circumstances of the case." [I Devlin on Deeds (3 Ed.) sec. 269.] "It is well settled that actual manual delivery is not essential to the validity of the deed (citing cases), if the purpose of the grantor was to treat the instrument as delivered, and the acts of the grantee show an acceptance (citing cases)." [Sec. 269, supra, note 5. See also Rumsey v. Otis, 133 Mo. 85, 34 S. W. 551; Harvey v. Long, 260 Mo. 374, 168 S. W. 708; and Gillespie v. Gillespie, 289 S. W. 579.] The evidence leaves no doubt but that after the indorsement of the note by the Loan Company, Gabbert regarded and treated both the note and deed of trust as delivered to the Bank: the Bank's acceptance is not questioned. There was therefore a valid and effectual delivery.

The Bank's release and discharge of Gabbert's indebtedness to the extent of $2500 was of course a sufficient consideration for the giving of the instruments in controversy.

The conclusions reached with respect to the questions of consideration and delivery render unnecessary the consideration of others which have been raised and discussed by counsel.

The Loan Company, the Bank and the State Commissioner of Finance, who was in charge of the Bank and winding up its affairs, were made parties defendant. The answer of the Loan Company

disclaimed any interest in the subject-matter of the suit. The separate answer of the Bank and the Commissioner, after denying "each and every allegation" of the petition, averred that Gabbert and wife duly executed the $2500 note and deed of trust in favor of the Loan Company and that these instruments were thereafter, "for a valuable consideration, duly indorsed, transferred, assigned and set over to the defendant Bank of Dearborn, which, therefore, for value, became the owner and holder thereof:" it concluded with a prayer that the deed of trust be declared a first lien on the land described in it. The trial court made a general finding of the issues in favor of the defendants, Bank and Commissioner of Finance, and against the plaintiff. It then made specific findings following the allegations of the answer as above indicated. On such findings it decreed that plaintiff take nothing by his petition, and that the deed of trust in question is a valid and a first lien on the land therein described.

As we have seen the $2500 note and deed of trust were never "executed" to, or "in favor of," the Loan Company, because there was never at any time a delivery so far as it was concerned. Consequently it never had title to them as effective instruments, and not having title, it could pass none by its indorsement. On the contrary there was a delivery of the papers after their completion, including the writing of the Loan Company's name on the back of the note, to the Bank, in the manner and under the circumstances heretofore indicated. Having been so delivered upon a valuable consideration moving from the Bank, the deed of trust is unquestionably a valid and subsisting lien on the land. And it is the only lien so far as the record discloses, that of the 15,000 deed of trust having merged into the title acquired by the plaintiff at the foreclosure sale.

The judgment of the court below, so far as it is operative on the rights of the parties, is correct. Its erroneous findings of fact and conclusions of law can not possibly result in prejudice to the plaintiff. It is therefore affirmed. All concur.