STERNE vs. WOODS.

APPEAL from Carroll Circuit Court.

LEONARD & STRINGFELLOW, *for Appellant.*

1. On the facts stated in the bill, the complainant is entitled to the relief prayed or equivalent relief by a decree requiring the defendant to execute a conveyance to Godsey in lieu of the one the defendant destroyed.

2. The evidence given establishes even against the denials of the answer, all the material facts charged in the bill.

NAPTON, J., *delivered the opinion of the Court.*

This was a bill in chancery.  The bill states that on the 14th Feb., 1845, the defendant, Woods, sold to one Blackburn J. Godsey, a tract of land in Carroll County, and executed and delivered to him a deed for the same, which, having been duly acknowledged, was filed in the clerk's office for record; that this deed was taken from the office, and fraudulently destroyed.  The complainant further represents, that after this deed had been made by Woods, and whilst it was on file in the clerk's office, he purchased the land conveyed by this deed from Godsey, and took from Godsey his deed.  The bill prays, that Woods be ordered to execute another deed.

The answer of Woods is, that Blackburn J. Godsey and he agreed to exchange lands, and that the title of the land which said Blackburn was to convey to him in exchange for his, was in one Burwell Godsey, and that the respondent, complainant and said Blackburn, met at the clerk's office in Carrolton, and procured four deeds to be written by one Harris, to-wit, one from Woods to Blackburn J. Godsey, and one from Blackburn J. Godsey to complainant, (he having bought from Blackburn) both for the land specified in the bill.  One from Burwell Godsey to Blackburn J. Godsey, and one from Blackburn J. Godsey to Woods, both of which last deeds were for the land said Woods was to receive in exchange from said Blackburn.  The respondent further states, that all the deeds were executed and acknowledged, except the deed from Burwell to Blackburn J. Godsey, and it was therefore agreed, that the three first mentioned deeds should be left with the Clerk of the Carroll Circuit Court, to be filed for record so soon as the deed from Burwell Godsey to Black-

burn J. Godsey should be executed, acknowledged and filed, and not otherwise. The defendant further states his belief, that complainant, Sterne, was present at this arrangement. The defendant further states, that his deed to Blackburn J. Godsey, was subsequently to this transaction taken from the clerk's office by said Blackburn, and kept with Burwell Godsey, and about the 1st of March, following, (the 14th of Feb., having been the time when the transaction above stated took place) he called on Burwell Godsey to get his deed to Blackburn J. Godsey, for the land which Blackburn was to convey to him, but the said Burwell refused to execute his deed, and delivered up to the defendant his deed to said Blackburn, which the defendant then destroyed. The defendant charges the complainant with being privy to the first arrangement, and denies his obligation to make any deed until Blackburn J. Godsey can procure the title from Burwell Godsey.

To this answer, there was a replication, and the case was set for hear-- ing. At the hearing, the clerk testified that some time in February, the defendant and Blackburn J. Godsey, came into the clerk's office and got *Harris*, a deputy clerk, to write some deeds for them ; that two deeds were left in the office, one executed by Woods and wife to Blackburn Godsey, and the other executed by said Godsey to Woods. The witness supposed these deeds to be left for record, but they were not recorded, and are now missing. A short time after, the complainant, Sterne, came into the office and made enquiries about the title of the land conveyed by Woods to Godsey. The witness showed him the deeds, and told him there was no incumbrance. The same day, or shortly afterwards, the complainant filed in the office a deed from Godsey to himself for the land conveyed by Woods to Godsey. This deed is produced and bears date 14th Feb., 1845.

Another witness, Baker, testified, that sometime in February, 1845, Blackburn Godsey offered to sell him a note on the complainant, and stated that it was a part of the consideration of a tract of land he had sold complainant. Witness saw the defendant and complainant both on the same day, and learned from them both, that the note was given as stated by Godsey, and that Woods (defendant) told him, complainant had received a valuable consideration for the note ; that it was given for the land as stated, and that complainant had good a got title to said land, for that he, Woods, had conveyed it to Godsey, and Godsey to complainant. Witness was acting for Merrill, who bought the note. The note was produced—bore date 24th Feb., 1845—assigned the same day to Mer- rell, and afterwards, in September, following, to Thomas.

*Wilcoxson,* the sheriff of Carroll county, stated that he saw the deed from defendant to B. J. Godsey in the clerk's office, and levied an execution against Godsey, upon the land conveyed. The execution was afterwards settled by complainant and said Godsey.

*Burwell Godsey,* stated that his brother Blackburn, left with him a deed from defendant to himself for the same land conveyed by Blackburn to complainant; that sometime afterwards, the defendant called on him, having a deed from Blackburn to himself for a tract of land owned by the witness, and desired witness to make a deed for said land to said Blackburn. Witness refused. Defendant first observed, that he could hold the land under the deed from Blackburn; then said it was of no account, as the witness had the title; then observed, that complainant had a good title; asked for the deed from himself to Blackburn. Witness handed him the deed; defendant said it had not been recorded, and was of no account, and he would tear it up, which he did. This deed was not marked "filed for record."

On the part of the defendant, *Harris,* the deputy clerk, testified, that in Feb., 1845, defendant and Blackburn Godsey came into the clerk's office and procured him to write four deeds, one from defendant and wife to Godsey, one from Godsey to defendant, one from Godsey to complainant, and one from Burwell Godsey to Blackburn Godsey. Complainant was not present. Witness understood that defendant and Blackburn Godsey had exchanged lands; that the deeds, except the one from Burwell to Blackburn Godsey, were left in the office, with the express understanding between defendant and Blackburn that as soon as Blackburn delivered to witness the deed from Burwell to himself, executed and acknowledged, the witness was to record the other deeds, or deliver them to the person to whom they were made. The witness further stated, that some short time after, Blackburn Godsey came into the office and handed witness a deed, which he supposed to be the one he was to get from Burwell, and witness gave him the deed executed by defendant— knows nothing of the deed from Blackburn Godsey to defendant. The deed from defendant to Blackburn was not filed for record.

Upon this testimony the bill was dismissed.

This is a bill to compel a party to execute a deed, which, it is alleged, he has fraudulently destroyed. The defendant admits the destruction of the deed, but alledges that it was never delivered, and the condition upon which its delivery depended never was performed. The only question is, whether the complainant makes out his case against the defendant's answer.

The testimony of Harris, the deputy clerk, who drew the deeds, and who must have known how the facts were, is conclusive that Woods' deed was not delivered or filed for record, and that it was agreed or understood, that it should not be delivered or filed until Blackburn Godsey procured a deed from his brother Burwell. The other testimony in this case seems designed to show that the defendant held out to others, that the transaction between Blackburn Godsey and himself was consumated; that Godsey had obtained a good title, as against him, and that any one might purchase with safety from Blackburn. There is no proof, that Sterne, the complainant, was present when the agreement was made in relation to the deeds, nor is there any proof to show that Woods made any representations to the complainant on the subject. Two witnesses, Baker, the agent of Merrill, and Merrill himself, who had bought Sterne's note for the purchase money of this land, testify, that Woods and Sterne both assured the witness that the note was given for a valuable consideration, and could be safely purchased; that the title of Blackburn Godsey to the land sold by Woods was good. These witnesses were interested witnesses, although no objection was made to them. But if such representations were made by Woods they would not affect the question between complainant and him, and they may have been made under a confident expectation that Blackburn Godsey would comply with his contract. It is difficult to understand how Woods had any interest in combining with Blackburn Godsey to defraud the complainant, and this seems to be the conclusion at which this testimony aims.

The fact, that the deeds were deposited in the clerk's office seems to have misled the complainant. He was in Carrolton, on the day when the conditional exchange was made between Godsey and Woods, and upon applying to the clerk, he is shown Woods' deed by the recorder, as a recorded deed, or one filed for record. But the proof is positive, both by Harris and by Burwell Godsey, that the deed was not marked "filed for record." The defendant should not suffer for the mistake of the clerk, in supposing that a deed was recorded by being simply left in the office, although not there for the purpose of being recorded, and not actually in the custody of the clerk.

The evidence is not satisfactory to my mind, that Woods said any thing to mislead the complainant as to the condition of the title. If he had been guilty of a fraudulent combination with Blackburn Godsey, a court of equity would not hesitate to decree a conveyance. The evidence is not entirely satisfactory either way, and we shall therefore affirm the decree of the Circuit Court.

The other Judges concurring, the decree affirmed.