Elizabeth Schwind, Appellant, v. Anthony O'Halloran, Administrator Pendente Lite of the Estate of Charles A. Schwind, Ferdinand Schwind and Eugene Schwind, Appellants.—142 S. W. (2d) 55.

Division Two, July 3, 1940.*

*NOTE: Opinion filed at September Term, 1939, May 4, 1940; respondent's motions for rehearing and to transfer to Court en Banc filed; motions overruled at May Term, 1940, July 3, 1940.

*William Kohn* for plaintiff-appellant; *Charles A. Neumann* for Ferdinand and Eugene Schwind.

488

*Suelthaus & Krueger* for respondent; *Robert C. Powell* of counsel.

BOHLING, C.—This is an action by Elizabeth Schwind, the widow of Charles A. Schwind, against Anthony A. O'Halloran, as Administrator pendente lite of the estate of Charles A. Schwind, deceased, and Ferdinand Schwind and Eugene Schwind. Plaintiff seeks to establish the interests of herself (and her transferees, her sons, the codefendants Schwind) in eight certain notes of the aggregate face value of $40,000, secured by deeds of trust, as property held by her husband and herself during his lifetime by the entirety (as well as to payments thereon made subsequent to his death), and to restrain said Administrator from interfering with the rights of herself and her said transferees in and to said property. Plaintiff's petition alleged, as does the joint answer of defendants Ferdinand and Eugene Schwind, that plaintiff transferred said notes and deeds of trust to said defendants, subject to plaintiff's reservation of the income therefrom for life, in consideration of said defendants' agreement to support and maintain her for the remainder of her life. Defendant O'Halloran contends, briefly stated, that said notes and deeds of trust constitute part of the estate of Charles A. Schwind, deceased; that, if ever held by the entirety, laches and estoppel are fatal to plaintiff's cause; and said defendant seeks to have the same turned over to him as Administrator aforesaid and to restrain plaintiff and his codefendants from interfering with his rights as such Administrator therein. Judgment and degree nisi for defendant O'Halloran, as Administrator aforesaid; and the Schwinds, plaintiff and defendants, appeal. The record affirmatively establishes that the amount involved exceeds $7,500. Facts developed with respect to the notes and deeds of trust subsequent to the death of Mr. Schwind are not important here and are omitted.

Charles A. Schwind died testate March 10, 1935. So far as having any bearing on the instant issues, he gave, devised and bequeathed all of his estate, after the payment of his debts and funeral expenses, to his widow, Elizabeth Schwind. They had lived together as husband and wife for fifty-seven years. Other than his widow, his heirs at law were Ferdinand Schwind, Eugene Schwind, Edna Koch, Mattie Feger, their children, and Charles A. Schwind, the son of a deceased son. Defendant O'Halloran was appointed Administrator upon the institution of a will contest.

Between 1906 and 1918, Mr. and Mrs. Schwind acquired title to 1220-1224 Russell avenue, 5229-5233 Gravois avenue, 5401 Gravois avenue, and 5027-5029 Louisiana avenue, all in the city of St. Louis, Missouri. In each instance the warranty deed conveyed the real

estate to "Charles A. Schwind and Elizabeth Schwind, his wife," as grantees, and recited that the consideration had been paid by "the parties of the second part"—said grantees.

Mr. and Mrs. Schwind, by warranty deed dated March 27, 1922, conveyed 5401 Gravois avenue for the recited consideration of "$100 and other valuable considerations to them paid." The actual consideration was $19,500 and was paid by a check issued to Charles A. Schwind.

They, by warranty deed dated May 29, 1922, conveyed 5229-5233 Gravois avenue for the recited consideration of "$100 to them paid." The actual consideration was $19,000 and was evidenced as follows: $6,000 cash; a $9,000 note secured by a first deed of trust and a $4,000 note secured by a second deed of trust on the property.

They, by warranty deed dated November 3, 1923, conveyed the Louisiana avenue property for the recited consideration of "$100 to them paid." The actual consideration was $15,000; of which $6,500 was cash; and $8,500 was evidenced by two notes—one for $6,000 and the other for $2,500—secured, respectively, by a first and a second deed of trust on the property.

The aforesaid notes and deeds of trust named Charles A. Schwind as the sole beneficiary and each of said deeds of trust recited that it was given as security for part payment of the purchase price of the property.

In 1924 Mr. Schwind erected a home at 3941 South Grand avenue at a cost of about $15,000. This property also was held by Mr. and Mrs. Schwind by the entirety.

They, by warranty deed dated January 25, 1928, conveyed the Russell avenue property for the recited consideration of "$100 and other valuable considerations to them paid." The actual consideration was $18,000, consisting of a $12,000 note secured by a first deed of trust on the property and $6,000 cash, which cash was evidenced by a check, after adjusting certain items, for $5,564.05 payable to a Mr. Feger, mentioned infra. Mr. and Mrs. Schwind were named as payees in this note and as beneficiaries in this deed of trust.

Mr. Schwind retired from business in 1921. He was still paying on one or two of the properties. He did not pursue any gainful occupation thereafter. Mrs. Schwind's time was taken with household duties and the raising of a family. She had no other occupation. The only affirmative testimony of record on the issue is that Mr. and Mrs. Schwind, after Mr. Schwind's retirement, lived off of the rentals and the proceeds from the sale of the real estate and interest from the secured notes.

The amounts involved in the foregoing transactions total $38,000 cash and $33,500 in notes and deeds of trust. Mr. Feger, a son-in-law of Mr. Schwind, was engaged in the real estate business and handled or assisted the Schwinds in the foregoing transactions,

drafting the conveyances, taking acknowledgments, etc. He testified that by 1924 or by 1925 Mr. Schwind was dealing in—buying, selling, exchanging, etc.—deeds of trust through the witness; that Mr. Schwind possibly began buying deeds of trust in a small way in 1922; that Mr. Schwind handled and directed all the transactions, including the collection of the principal and interest; that Mrs. Schwind did not assume any control over such matters; that, for instance, Mr. Schwind instructed the witness in 1927 to turn over to Mrs. Schwind payments thereafter made on a certain $2,250 secured note, and in 1932, payments made on a secured note having an outstanding balance of $1,400 but, for some reason undisclosed of record, thereafter had the last check covering a balance of $377.70 due thereon issued to himself; that the witness frequently called at the Schwind home on business matters, which were transacted with Mr. Schwind, and that when the home was erected in 1924 Mr. Schwind had the witness attend to the payment of all the construction bills. The $12,000 note and deed of trust standing in the names of Mr. and Mrs. Schwind, secured by the Russell avenue property, were handled by Mr. Schwind as his individual property, the same as were the other secured notes and the cash derived from the sale of said real estate.

At the time of Mr. Schwind's death none of the original deeds of trust remained in his possession. The only property in which he had an interest, according to the record, was the home place and the secured notes here involved. The proceeds derived from the sale of the real estate, cash and secured notes, were not directly traced to the notes and deeds of trust involved in this litigation; except the aforesaid $12,000 note, which together with two $2,500 secured notes (the source of which is not directly shown of record) were exchanged for three of the secured notes, aggregate face value $13,500, here involved, $1,500 cash and a $2,000 account receivable. We deem other testimony respecting the handling of a few checks given for interest, etc., of slight probative force to establish Mrs. Schwind's interest and refrain from detailing it.

In 1925 Mr. Schwind rented and thereafter kept a safety deposit box. The box stood in his name but Mrs. Schwind was deputized to enter the box. This authority was once revoked by Mr. Schwind but was reinstated by him two weeks later. The record gives no indication that Mrs. Schwind was ever informed or had knowledge of this action during Mr. Schwind's lifetime. On February 11, 1935, Mrs. Schwind, in company with her son Ferdinand, entered the box and took the notes and deeds of trust here involved home. There was testimony, not credited by the chancellor, that Mr. Schwind instructed her so to do; and that on the following day Mr. Schwind delivered these notes and deeds of trust and gave his interest therein to Mrs. Schwind, stating they were as much Mrs. Schwind's property as his. The

notes were payable to third parties and had been endorsed in blank—payable to bearer.

Plaintiff's petition alleges she and her husband held the secured notes as tenants by the entirety; also, that shortly prior to his death he gave and surrendered "*his* interest" in and delivered said notes to plaintiff. The pleas are not in the alternative and the Administrator says they are necessarily inconsistent. We are cited to no authority holding a husband may not transfer his interest in an estate by the entirety to his wife. The contention is overruled.

The administrator says Mr. Schwind's actions, that is, his assuming control and dominion of the proceeds derived from the sale of the real estate held by the entirety, established an intention on the part of Mr. Schwind to the effect that the title to the real estate was taken in the names of himself and wife as a matter of convenience only and that a resulting trust in said real estate existed in Mr. Schwind's favor. Fulbright v. Phoenix Ins. Co., 329 Mo. 207, 216 [II], 44 S. W. (2d) 115, 117[2, 3], sufficiently distinguishes and specifically mentions most of the cases relied upon by the Administrator on this issue. It is there pointed out that no case was found establishing a trust in the husband's favor where he furnished the money and purposely had the conveyance made to his wife or himself and wife by reason of "his mere intention that the deed should not have the full effect the law affixes to it." The court reasoned that to so hold ".would not only be contrary to well-recognized rules of law relative to conveyances and other written instruments, but would breed uncertainty and confusion regarding titles to real estate and open the way for the commission of fraud and perjury." See, also, Haguewood v. Britain, 273 Mo. 89, 92[I], 199 S. W. 950[2]. The issue does not pivot merely on the intention of Mr. Schwind. An estate by the entirety in Missouri and at common law possesses like characteristics. Stifel's Union Brewing Co. v. Saxy, 273 Mo. 159, 168, 201 S. W. 67, 70[8], L. R. A. 1918C, 1009; Frost v. Frost, 200 Mo. 474, 483, 98 S. W. 527, 528, 118 Am. St. Rep. 689; Bains v. Bullock, 129 Mo. 117, 119[I], 31 S. W. 342, 343[I]. Unities of interest, title, time and possession exist in the husband and wife. They are one person in law. Upon the death of one, the survivor continues to hold the whole title because there is no one to share it—not because of the survivorship, which effects a change in the person only and not in the estate. Garner v. Jones, 52 Mo. 68, 71[1]; Wilson v. Frost, 186 Mo. 311, 319, 85 S. W. 375, 377. At common law the husband stood as the legal personification of the martial unit and was entitled to the possession and usufruct of the wife's real estate by reason of his martial rights, including real estate held by the entirety. Hough v. Jasper County Light & Fuel Co., 127 Mo. App. 570, 576, 106 S. W. 547, 548. However, our Married Woman's acts (Cf. Secs. 2998, 3002, 3003 and 3004, R. S. 1929, Mo. Stat. Ann., pp. 5055, 5062, and 5064) pro-

494

tect the wife's interest in an estate by the entirety by removing the husband's *jus mariti* at the common law. Ashbaugh v. Ashbaugh, 273 Mo. 353, 357[II], 201 S. W. 72, 73[3]; Stifel's Brewing Co. v. Saxy, supra. Section 3003, supra, provides in part: "This section shall not effect the title of any husband to any personal property reduced to his possession with the express assent of his wife: *Provided*, that said personal property shall not be deemed to have been reduced to possession by the husband by his use, occupancy, care or protection thereof, but the same shall remain her separate property. . . ." The fact that they are husband and wife does not afford the husband ground for reclaiming at will, irrespective of the consent of his wife, property theretofore effectively given his wife.

■ There is no positive proof that Mr. Schwind furnished all of the consideration for the conveyances to himself and wife. Each deed recited that Mr. and Mrs. Schwind paid the consideration therefor. Had Mr. Schwind paid the consideration and directed that title be vested in himself and wife, the law would presume he intended the conveyances as a provision for his wife (Liberstein v. Frey (Mo.), 92 S. W. (2d) 114, 117[1]; Bender v. Bender, 281 Mo. 473, 476[I], 220 S. W. 929, 930[2], among others), and parol evidence of a mistake or fraud or other action affording legal escape from the convenants of the deeds would have to be clear, cogent and convincing, as well as so definite and positive as to leave no room for doubt (Curd v. Brown, 148 Mo. 82, 92[I], 49 S. W. 990, 992[I]; Viers v. Viers, 175 Mo. 444, 453, 75 S. W. 395, 398; Wimbush v. Danford, 292 Mo. 588, 608, 238 S. W. 460, 466[5]). There being no such evidence of record, the existence of an estate by the entirety in the real estate stands established.

■ In Frost v. Frost, 200 Mo. 474, 484, 98 S. W. 527, 529, 118 Am St. Rep. 689, the husband and wife sold real estate held by the entirety for $3,000. The husband took possession and control of said money and applied $2,800 thereof to the purchase of other land, the title to which was taken in his own name. The court said: ". . . if the husband takes the proceeds of property that belonged to him and his wife in entirety and invests the same in other land taking the title to himself alone, a court of equity, at the suit of the wife, will raise a resulting trust in her favor, and decree that the husband holds the title in trust for his wife and himself as an estate in entirety;" and to the extent that $2,800 constituted part of the purchase price decreed an estate by the entirety in the land. Hamrick v. Lasky (Mo. App.), 107 S. W. (2d) 201, 203[1], holds the surplus received at a foreclosure sale of property held by the entirety retains its entirety character. See, also, Kingman v. Banks, 212 Mo. App. 202, 251 S. W. 449, following Stifel's Union Brewing Co. v. Saxy, supra. In other words, the proceeds derived from the sale of property held by

the entirety, absent other factors, retains its entirety characteristics and such characteristics follow it upon reinvestment.

The Administrator cites Williams v. Safety Savings and Loan Assn., 228 Mo. App. 135, 138, 58 S. W. (2d) 787, 789[6], and Safety Savings and Loan Assn. v. Williams, 228 Mo. App. 595, 600, 71 S. W. (2d) 848, 851[9-11], holding that a preexisting estate by the entirety was extinguished by a foreclosure sale under a deed of trust on the property. They do not reach the instant issue. Plaintiff does not seek to recreate, renew or revive an estate by the entirety. Under the record, the estate by the entirety did not cease to exist upon the sale of the real estate but merely was transferred from the real estate to the proceeds derived threfrom. The Frost and Hamrick cases, supra. Consult also Holmes v. Kansas City, 209 Mo. 513, 523[I], 108 S. W. 9, 12[I], 123 Am. St. Rep. 495.

There is no evidence of any gift by Mrs. Schwind of her interest to Mr. Schwind or a reduction by her husband of her said interest to his possession with her assent in writing or otherwise. He was as much entitled to possession as she. His mere use, care or protection of the property did not affect a change in its ownership.

■ Does the evidence sufficiently trace the proceeds from the real estate held by the entirety to the secured notes here involved? We think so. The evidence of record on the issue is that Mr. Schwind, when he retired in 1921, was still paying on one or two of the properties; that he and Mrs. Schwind thereafter lived off of the rentals of the properties and the proceeds and interest derived from their sale. From this testimony it is clear that the proceeds of the sale of the real estate held by the entirety furnished the means of subsistence for Mr. and Mrs. Schwind and the purchase of the secured notes by Mr. Schwind. In Graham v. Stroh, 342 Mo. 686, 694[2], 117 S. W. (2d) 258, 261[6], a showing that a tenant for life under a will "did not have any money or property of consequence from any source," except that held as such tenant for life, was considered sufficient to trace property given by the life tenant to others to the estate of the testator. See also Roberts v. Roberts (Mo.), 291 S. W. 485, 486[2], 488[10]. Additional factors exist: The $12,000 secured note held by the entirety was traced into the secured notes in suit. Mrs. Schwind was deputized to enter Mr. Schwind's safety deposit box, where he kept valuable papers. The secured notes involved are endorsed to bearer. Mrs. Schwind had them in her possession at the time of her husband's death. They, according to the undisputed testimony, were delivered into her possession by Mr. Schwind after he requested her to bring them to their home, with the statement they belonged to Mrs. Schwind as much as they belonged to him. All this is in recognition of Mrs. Schwind's interest in the property and a holding by the entirety.

■ The contention that estoppel and laches preclude plaintiff

is ruled against the Administrator. The scope of this controversy is restricted in final analyses to the rights of the husband and the wife in the residue of an estate by the entirety in possession. The rights of no innocent third party are involved. The doctrine of laches borrows from the doctrine of equitable estoppel and is akin to it. Zahner v. Voelker (Mo. App.), 11 S. W. (2d) 63, 64[3], the nearest in point of the Administrator's cases, held a husband's administrator had no claim to property taken in the name of the wife, although derived from an estate by the entirety, where the husband had full knowledge of, acquiesced in and consented to the title being taken by the wife. Laches and estoppel are not discussed. The holding conforms to the Liberstein, Bender and other rulings, supra. In Blake v. Meadows, 225 Mo. 1, 27-29, 123 S. W. 868, 874, 875, third parties unsuccessfully sought to estop a wife from asserting a resulting trust in property purchased with the wife's inheritance by the husband and taken in his name. The court refused to apply the rule of estoppel harshly and with close particularity against the wife. We interpolate in the conclusion: "The [estate,] personnel of [and the legal relationship between] those involved in estoppel must not be lost sight of, and it is not unreasonable to hold that facts sufficient to estop a Socrates or other 'lord of creation' would not estop Susan, Jane and Mary—good Missouri mothers all." Stevenson v. Smith, 189 Mo. 447, 467, 88 S. W. 86, 92, avows a "judicial indisposition to apply the doctrine of laches with close particularity to the dealings of an old mother with her confidential business manager, a son, with whom she resided, and on whom she depended for ,the solaces of filial ministrations." Consult 21 C. J. p. 251, n. 71[b]; Annotation, 121 A. L. R. 1401[g]. Harvey v. Long, 260 Mo. 374, 384[II], 168 S. W. 708, 710[2], states: "They are husband and wife; members of a single family of which he is, in contemplation of law, the director and head. They are the natural agents, each of the other, in the performance of the duties of their respective positions. It would exhibit the same superfluity of caution in the wife of a business man to keep a strong box of her own for the safe keeping of her important papers, as for a man to keep in office or kitchen a separate repository in which he might personally control the food provided for the idiosyncrasies of his own palate. Care and watchfulness of her property interests come as naturally within his province as do care and watchfulness of the menage within hers." Laches may be successfully invoked only when there is some natural justice back of it. Stanton v. Thompson, 234 Mo. 7, 15[d], 136 S. W. 698, 701[d]; Adams v. Gossom, 228 Mo. 566, 584[f], 129 S. W. 16, 21[f]; Bucher v. Hohl, 199 Mo. 320, 330, 97 S. W. 922, 925, 116 Am St. Rep. 492. So far as indicated by the instant record, Mr. Schwind's assumption of dominion over the property held by the entirety and Mrs. Schwind's inaction resulted to Mr. Schwind's advantage, not his injury or detriment. We need

not discuss any possible distinction between the position of a husband and wife with respect to these issues under Sec. 3003, supra.

The testimony establishing a gift by Mr. Schwind of his interest to Mrs. Schwind was discredited by the chancellor. The judgment is, therefore, reversed and the cause remanded with directions to enter a decree based upon the existence of an estate by the entirety during the joint lives of Mr. and Mrs. Schwind. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.