ALMA LINDERS v. EDWIN Z. LINDERS, JR., Appellant, and WILLIAM LABAGGE ET AL., Defendants.—No. 40051.—204 S. W. (2d) 229.

Division One, July 14, 1947.

Rehearing Denied, September 8, 1947.

*Gloria Lee Miller* and *Henry C. M. Lamkin* for appellant Edwin Z. Linders, Jr.; *Cobb, Logan, Roos & Armstrong* of counsel.

*Herbert W. Ziercher* for respondent.

VAN OSDOL, C.—Action by Alma Linders, widow of Edward (or Edwin) Z. Linders, deceased, to cancel notes, $8900 balance principal, secured by a deed of trust on real estate situate on Manchester Road in St. Louis County. The notes had been executed by Edward Z. Linders and Alma Linders, plaintiff, as co-makers. Defendant Edwin Z. Linders, Jr., is the son of Edward Z. Linders by a former marriage. The other defendants are the trustee and the record beneficiary of the deed of trust, and the unknown holder or holders of the secured notes. It was alleged by plaintiff the notes had been paid by and delivered to a co-maker, her husband and defendant's father, but had been stolen by another and had come into the possession of some unknown person or persons. The defendants, other than Edwin Z. Linders, Jr., made default. Edwin Z. Linders, Jr.

(hereinafter referred to as "defendant") filed answer alleging himself to be the owner and holder of the notes; he alleged the notes had not been paid but had been purchased by the co-maker, his father, and had been entrusted to another to be delivered to defendant upon the father's death. Defendant prayed for a determination of the ownership of the notes in him, for judgment for the balance of the principal, for a decree declaring the deed of trust to be a valid lien, and for a foreclosure. The trial court found the issues for plaintiff, rendering judgment cancelling the instruments. Defendant has appealed.

At the outset we are confronted by a contention the court should have entered judgment for defendant because plaintiff did not plead to the answer. It is said the answer was a cross-claim and, plaintiff not having filed an answer to the cross-claim, the trial court should have sustained defendant's motion for judgment for defendant on the pleadings. See Sections 32, 41, 67 and 68, Civil Code of Missouri, Laws of Missouri 1943, pp. 369, 371 and 376; and, generally, Vol. I, Carr, Missouri Civil Procedure, sec. 161, pp. 320-324. It is unnecessary to determine whether the defendant's answer constituted a cross-claim within the meaning of Section 32, Civil Code of Missouri, supra, requiring an answer to be filed thereto by a plaintiff. The record discloses that, when defendant urged his motion for judgment on the pleadings and before the trial court ruled on the motion, the issues of the case were discussed and analyzed by the trial court and by the parties, plaintiff and defendant; and the trial of the cause proceeded on the theory the plaintiff had denied the allegations of defendant's answer. Since the office of the pleadings is to define and to isolate the issues to those controverted so as to advise the trial court and the parties of the issues to be tried and to expedite the trial of a cause on the merits, the absence of a formal pleading traversing the allegations of the answer should not be considered prejudicial to a party defendant who understood what issues were being tried.

In order that the contentions of the parties on the merits of the appeal herein may be fully understood, it is necessary that we should make an extended statement of the evidence.

Alma Linders, plaintiff, and Edward Z. Linders were married at Union, Franklin County, October 29, 1924. The husband was then vested with the title to the real property described in the deed of trust mentioned supra. He conveyed the title to another who conveyed the property by warranty deed, dated August 6, 1930, to "Edward Z. Linders and Alma Linders, his wife." A wholesale and retail market of foods, known as "Linders Market," was successfully conducted by Edward Z. Linders in a building on the lands described in the deed. The plaintiff wife worked at the market and assisted her husband in its management. The notes and the deed of trust (instruments in controversy) were executed by the husband and wife,

Edward Z. Linders and Alma Linders, March 8, ▋▋▋ 1939; and on March 8, 1942, the aggregate principal then due and unpaid being $11,000, the husband and wife and the agent, John H. Armbruster and Company, Inc., of the holder of the notes entered into an agreement extending and renewing the obligation for a further period of three years. In 1944, Edward Z. Linders was in failing health, and the market (stock and fixtures only) was sold in June of that year for a consideration of $20,000, which sum was paid to the husband. June 30, 1944, there remained $8900 unpaid on the principal obligation at which time the husband, Edward Z. Linders, paid to John H. Armbruster and Company the balance of the principal and accrued interest, whereupon John H. Armbruster and Company executed a statement and receipt in language requested by Edward Z. Linders, in part, as follows:

"This pays off first deed of trust on Linders Market property. Papers are not to be marked paid, and are to be held by us uncancelled until Mr. & Mrs. Linders return from a vacation trip to Canada.

"Should anything happen to both Mr. or Mrs. Linders, above mentioned first deed of trust papers on Store are to be delivered to Mrs. Madeline L. Haspel . . . who is the sister of Mr. Linders."

Edward Z. Linders and plaintiff thereafter went on the contemplated trip to Canada, returning on or about August 29, 1944, at which time the note and deed of trust were delivered by John H. Armbruster and Company to Edward Z. Linders.

On January 17, 1944, Edward Z. Linders had rented Safe Deposit Box No. 2341 in the vaults of the Easton-Taylor Trust Company. He rented the box under the name of "Edward Boekemeyer" and designated his sister, Madeline L. (Mrs. W. J.) Haspel, as his attorney in fact with authority to enter the vaults of the bank and to change or withdraw, from time to time, the contents of the box, and to surrender the box and the keys thereto. The record entries relating to box No. 2341 disclose the box was entered eleven times by "Edward Boekemeyer" on dates beginning January 18, 1944 and ending September 15, 1944. The box was entered but twice according to the record of entries, by "Mrs. W. J. Haspel"—on December 29, 1944 and January 2, 1945.

Edward Z. Linders died December 29, 1944. On January 2, 1945; on the day of and preceding her brother's funeral, Madeline L. Haspel, according to her testimony, took from the safe deposit box the instruments here in controversy (and other documents). She testified (as did defendant) that she delivered the instruments herein involved to defendant "around ten days, two weeks" after the death of her brother. It was the further testimony of Madeline L. Haspel that her brother had given her the instruments in August 1944, "I was told to care for these papers in the interest of his son." He (her brother) said, "I feel I did not . . . I feel I failed my son

. . . when he needed me. These papers are left to you to give to him after my death." She put the papers in the safe deposit box at that time (30th or 31st of August); "he had quite a talk with me, saying he would like to have left a will, but he was never allowed to make one, never had the sanction to make one by his wife. Now, he said, 'I feel I am in failing health and I must provide in a little way to my son for what I have neglected to do for many years.' " A businessman, Martin Hussman, witness for defendant, testified Edward Z. Linders had stated he had "bought a deed of trust that was against this property on Manchester and left it uncancelled, and that he had taken that deed of trust and turned it over to his sister for his son as he felt that he should do something for him, . . . leave him something as that was his own flesh and blood, and he really wanted to get things in shape because he did not feel any too good . . . "

Defendant-appellant contends that the trial court erred in its finding that the notes secured by the deed of trust were paid and in ordering the cancellation of the instruments. It is said the Negotiable Instrument Law clearly provides when a negotiable instrument is discharged (Section 3134, R. S. 1939, Mo. R. S. A., Section 3134), and that none of the circumstances provided in the Section obtains under the facts in the instant case; that the receipt prepared ▮▮▮ by John H. Armbruster and Company at the request of Edward Z. Linders shows he had no intention to pay and discharge the instruments; and that Edward Z. Linders, a co-maker, having acquired the notes before maturity, could and did reissue and negotiate the notes. Defendant also contends the trial court erred in the admission of evidence. On the other hand, it is contended by plaintiff-respondent that the payment of an obligation secured by a lien upon an estate by the entirety by one of the tenants extinguishes the lien upon the entirety estate; that the death of Edward Z. Linders terminated the authority of Madeline L. Haspel, his attorney in fact, to enter the safe deposit box; and that the transactions of Edward Z. Linders were in fraud of plaintiff wife.

As we have said, the trial court found the issues for plaintiff. More particularly, the trial court found that

"on or about the 30th day of June, 1944, the balance due on said deed of trust and notes secured thereby was fully discharged by the payment to said John H. Armbruster & Company of the principal balance thereof, to-wit: $8900.00 and the accrued interest thereon.

"That thereafter said deed of trust and the principal note secured thereby were deposited in a safe deposit box at the Easton-Taylor Trust Company . . . by Edward Linders, the husband of plaintiff, which said safe deposit box, known as safe deposit box 2341 . . . , was rented by said Edward Linders, sometimes also known as Edward Z. Linders, under the fictitious name of Edward Boekemeyer and that the same were unlawfully removed from said safe

deposit box by Mrs. W. J. Haspell, sister of said Edward Linders, sometimes known as Edward Z. Linders, alias Edward Boekemeyer, on January 2, 1945, four days following the death of said Edward Linders, . . . and that said Mrs. W. J. Haspell had no authority following the death of said Edward Linders, . . . to enter into his safe deposit box following his death.''

In our opinion inferences are justifiably drawn from the facts related which uphold the trial chancellor's finding that the notes were paid and the lien of the deed of trust extinguished. In examining the evidence and its effect, it is well for us to bear in mind the legal relationships which existed between plaintiff and Edward Z. Linders. First—we must recognize their relationship was that of husband and wife. "No more confidential relation is known to the law than that of husband and wife." Hickman v. Link, 97 Mo. 482, 10 S. W. 600. Second—as husband and wife and having been vested with title to the described land by joint deed during coverture, they were tenants by the entirety. An estate by the entirety in Missouri and at common law possesses like characteristics. Unities of interest, time, title and possession exist in the husband and wife. Upon the death of one, the survivor continues to hold the whole title because there is no one to share in it—not because of the survivorship, which effects a change in the person only and not in the estate. Schwind v. O'Halloran, 346 Mo. 486, 142 S. W. 2d 55. Third—the husband and wife were co-makers and jointly (and severally) liable on the notes secured by the lien on the described land. We also notice the evidence that the husband, co-maker, and tenant by the entirety paid the notes in full to the agent of the owner and holder and came into the possession of the notes and incidental lien before the maturity of the notes. We will assume the husband could have thus acquired the notes and could have reissued and negotiated the notes before maturity, as defendant urges. The evidence shows he did not do so. Defendant is not a bona fide purchaser of the notes from a co-maker who had paid the notes and reissued and negotiated them for value before maturity, as were the plaintiffs in the case of Sater v. Hunt, 66 Mo. App. 527, and in other cases cited and relied upon by defendant.

We have seen from the "statement and receipt," supra, that Edward Z. Linders, when the balance of principal and accrued interest on the notes was paid to John H. Armbruster and Company, requested the instruments were "not to be marked paid" but were to be held until the husband and wife returned from Canada. The notes were to be delivered to Madeline ▇▇▇ L. Haspel "should anything happen" to *both* the husband and wife; but it would seem the statement and receipt does not indicate an intention or a direction that the notes were to be delivered to Madeline L. Haspel in the event either or both returned from Canada. It could be reasonably said that, if but one survived the trip to Canada, the instruments were to be de-

livered to such survivor, spouse, co-maker, and tenant by the entirety. Both husband and wife survived the vacation trip to Canada, however, and the instruments were delivered, according to the evidence, into the possession of the husband; and it is conceded the instruments were in the safe deposit box of the husband at the time of his death. There is no question the instruments were removed at a time after the death of Edward Z. Linders and were removed from the box by his attorney in fact after his death had revoked her agency in his behalf, as the trial chancellor has found. From these facts it should not be inferred the husband intended to treat the notes as unpaid and to hold the instruments for a purpose of enforcing the entire obligation, or any obligation of contribution from the wife. Rather should the presumption be indulged that the husband paid the notes for the benefit of both the husband and wife, and for the benefit of both as tenants by the entirety. The further rebuttable presumption could be indulged, from the evidence thus far considered, that the payment of the wife's proportion of the joint debt secured by the lien upon the entirety estate was intended as a gift to the wife (see Meyers v. East End Loan and Savings Assn., 139 Md. 607, 116 A. 453), quite as the presumption of intention obtains to make provision for the wife, when the husband furnishes the consideration for a conveyance of real estate taken in the name of husband and wife. Sutorius v. Mayor, 350 Mo. 1235, 170 S. W. 2d 387, and cases therein cited.

We have thus far ignored the testimony of Madeline L. Haspel and Martin Hussman. It is apparent the trial court did not give such an effect to their testimony as to destroy or rebut the presumptions or inferences noticed supra. Theirs is the only verbal testimony in the record which tends to show the husband intended to purchase the instruments and to hold the instruments as assets in his hands. Their testimony is of declarations and statements of the husband, self-serving in character, to the effect that he was the owner of the entire obligation evidenced by the instruments and could transfer the ownership of the whole obligation by gift to the son, effective upon the husband's death. The statements of Edward Z. Linders relating to his health, however, are self-disserving—admissions of his declining health, and tend to show the asserted gift of the notes was in contemplation of death. Otherwise expressed, the defendant in tendering such evidence would have a court of equity rule upon a theory that, although the husband as a co-maker was obligated to the wife to contribute his proportion of the joint debt, he nevertheless had purchased the whole obligation and was transferring it by gift effective upon his death to his son. Now the husband, *a co-maker, had an obligation to* the wife, *a co-maker, to contribute his proportionate part of the debt*. It is readily seen that to adopt such a theory as that of defendant would shift the burden of the ultimate payment of the entire debt upon the surviving wife and impress the land wholly

owned by her with the lien securing the whole debt, including the portion of the debt the husband was obligated to contribute. Viewed from another angle, defendant's theory would contemplate that a husband should be permitted by a court of equity to use his personal assets to purchase a security and transfer it to another without consideration and in contemplation of death, and thus effectuate an intention to defeat the wife's marital rights in her husband's estate. A court of equity should not embrace such a theory. No case has been cited, nor have we found a case, which treats with a situation quite like that of the instant action. The principle apparently applied by the trial chancellor, however, is that illustrated in cases involving the relation of husband and wife and wherein the husband has undertaken to dispose of his property in contemplation of death to a voluntary grantee or donee with the view of defeating the marital rights of the wife. Szombathy v. Merz, 347 ▮▮ Mo. 776, 148 S. W. 2d 1028; Merz v. Tower Grove Bank and Trust Co., 344 Mo. 1150, 130 S. W. 2d 611; Newton v. Newton, 162 Mo. 173, 61 S. W. 881; Rice v. Waddill, 168 Mo. 99, 67 S. W. 605; Stone v. Stone, 18 Mo. 389. We uphold the trial chancellor's finding that the notes were paid and the incidental lien extinguished.

▮▮ It could be urged the husband, a co-maker, having paid the notes in full to the holder, retained the notes and incidental lien with the intention of enforcing contribution from his co-maker, the wife, and that he had intended to give to defendant the right to recover of and from plaintiff her portion of the joint debt. Consult In re Dell's Estate, 276 N. Y. S. 960. Such a theory is not that of defendant, who by his answer prays judgment for the full balance of the debt and who states in his brief, ''contribution only applies as between parties to the note . . . and not as to third parties. So, there could be no contribution between Edwin Z. Linders, Jr., and Alma Linders. Edwin Z. Linders, Jr., is entitled to the full amount of the note, namely, $8900 plus interest, against Alma Linders.''

▮▮ Of the contentions of error in the admission of evidence— plaintiff offered herself as a witness and testified of her marriage, of the manner in which the Linders Market was operated, of certain conversations with Madeline L. Haspel, and of the amount received upon the sale of the market. Portions of her testimony were admitted over objections interposed by defendant that ''it is not the best evidence,'' or ''it is really unimportant and immaterial,'' or ''is hearsay.'' Some of the grounds for the objections were apt and sufficiently particular to have made the rulings erroneous had the case been one where the trial was before a jury. We are not required to reverse the judgment because the trial court incorrectly ruled upon facts without a jury. ''The presumption is that the court, in weighing the evidence, was governed by correct rules of law. Hence it is held that the same rules of strictness are not enforced, on appeals, where the trial was by

the court, as in cases where the trial was before a jury." Moffitt v. Hereford, 132 Mo. 513, 34 S. W. 252; see also Security State Bank v. Dent County, 345 Mo. 1050, 137 S. W. 2d 960, and cases therein cited: On appeal in actions of an equitable nature the appellate court considers such evidence in the record as deemed admissible, and excludes from consideration evidence improperly admitted and reaches its judgment on the competent evidence offered without regard to the trial chancellor's ruling. Steinhoff v. Kinder et al., Mo. Sup., 186 S. W. 2d 600; Lanphere v. Affeld et al., Mo. Sup., 99 S. W. 2d 36.

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.