Lucille GLYNN, Plaintiff-Respondent,

v.

H. L. GLYNN, Defendant-Appellant,

and

B. F. Thompson, Incorporated, a Corporation, Defendant.

No. 7451.

Springfield Court of Appeals.

Missouri.

May 28, 1956.

Eugene E. Northern, Rolla, Wm. J. Becker, Clayton, for appellant.

Edgar Mayfield, Lebanon, for respondent.

McDOWELL, Presiding Judge.

This appeal is from a judgment for $1,570.09 in favor of plaintiff and against defendant, H. L. Glynn, rendered on count 3 of plaintiff's amended petition for monies collected on a note for $3,500 held by the parties as an estate by the entirety.

The original action was in four counts and named as defendants H. L. Glynn and B. F. Thompson, Inc. Two promissory notes were involved. The first two counts sought an accounting for the proceeds of said notes against both defendants; counts 3 and 4 sought a judgment against defendant, Glynn, for one-half of the monies collected on said notes. A motion to dismiss, filed by B. F. Thompson, Inc., was sustained at the close of plaintiff's case; the cause proceeded against defendant, Glynn, resulting in a judgment in favor of plaintiff on count 3 of the petition for $1,570.09 and for defendant, H. L. Glynn, on counts 1, 2, and 4.

Count 3 of plaintiff's amended petition alleged that on March 6, 1951, plaintiff and defendant were husband and wife; that on that date they purchased from B. F. Thompson, Inc., a promissory note, secured by deed of trust, in the sum of $3,500; that this note was executed by P. N. Milward and Nellie V. Milward to B. F. Thompson, Inc., payee, in the sum of $3,500, bearing interest at six per cent annually and payable in monthly instalments of $35 each; that B. F. Thompson, Inc., duly assigned said note and security to Lucille Glynn and H. L. Glynn and agreed to service the loan for a commission of one-half of one per cent; that plaintiff and the defendant owned the note as tenants by the entirety; that on March 11, 1953, they were divorced and thereafter became the owners of said note as tenants in common, each being entitled to one-half of the proceeds thereof; that defendant has come into possession of the proceeds of said note and converted them to his own use and because of such facts plaintiff has been damaged in the sum of $1,750.

The separate answer of H. L. Glynn admits the purchase of the note as alleged;

denies that plaintiff has any interest therein or furnished any money for the purchase thereof; admits that defendant received all of the instalment payments collected by B. F. Thompson, Inc., and that after the divorce he collected the entire amount due on the note. The marriage between plaintiff and defendant is admitted and the date of the divorce, March 11, 1953. Defendant specifically pleads that all of the property rights between plaintiff and the defendant were settled in the divorce action.

Defendant assigns two allegations of error. First, that the evidence was insufficient to support the findings of the trial court that the $3,500 note was held as an estate by the entirety. Second, the trial court erred in considering evidence in the nature of a memorandum contained on a book account of one of plaintiff's witnesses without requiring testimony to identify the contents of the memorandum to be a true and correct copy of the endorsement on the lost or destroyed note.

In our opinion we will refer to appellant as defendant and respondent as plaintiff, the position they occupied in the lower court.

The evidence shows that on February 24, 1951, B. F. Thompson, Inc., a Missouri corporation with offices at Rolla, Missouri, loaned the sum of $3,500 to P. N. Milward and Nellie V. Milward, taking a note and deed of trust as security from the Milwards. This note was in the principal amount of $3,500 with interest at the rate of 6 per cent, payable at the rate of $35 per month, said payments including principal and interest, with the first payment due April 1, 1951. Prior to making this loan, Mr. B. F. Thompson, president of B. F. Thompson, Inc., had discussed this particular loan with the defendant, and defendant had told Mr. Thompson that he would buy the loan. Thereafter, defendant discussed the loan with plaintiff, who was at that time defendant's wife. They looked over the property on which the deed of trust was to be executed, and in a few days defendant told plaintiff that he would give her the money to buy the loan. Defendant obtained proper authority for the plaintiff to gain access to a safety deposit box in a St. Louis bank, and plaintiff went to St. Louis, entered the box and obtained therefrom $3,500 in cash. She returned to Rolla, Missouri, and deposited this money in her bank account. She then went to the offices of B. F. Thompson, Inc., wrote the company a check for $3,500 which she gave to Mr. Thompson and he, in turn, gave her the Milward note and deed of trust. When this Milward note was so purchased, it was assigned to "Dr. H. L. Glynn or Lucille Glynn."

Plaintiff had nothing to do with the arrangements made by defendant and Mr. Thompson concerning this transaction. The defendant made all of the arrangements with Mr. Thompson and told Thompson how to assign the note. Everything concerning the purchase of the loan was handled by the defendant except the actual delivery of the check and the picking up of the note, deed of trust and other papers. Thereafter, B. F. Thompson, Inc., collected the monthly payments on this loan and remitted same to defendant, until October, 1953, after which the company no longer serviced the loan. The balance remaining unpaid on the note as of October 9, 1953, following the last payment collected by B. F. Thompson, Inc., was $2,915.90. On November 23, 1953, this balance was paid in full to the defendant by the Milwards through the bank. When the note was so paid, the note and deed of trust were turned over to the Milwards and Mrs. Milward destroyed them.

The defendant and plaintiff were divorced by a decree of the Circuit Court of Phelps County, Missouri, on March 11, 1953. As of the date of the divorce, the unpaid balance on the Milward note was $3,055. Thereafter, defendant received $236.28 in payments on the note from B. F. Thompson, Inc., said sum being the net amount received after deduction of the company's collection fee, and he received the final lump sum payment of $2,915.90 on November 23, 1953. Plaintiff never received any of the money or proceeds from the Milward note, and defendant admitted that he received all of the proceeds from this note with the exception of the small collection fee deducted from each payment by B. F. Thompson, Inc., for servicing the loan. Concerning the Mil-

ward loan, plaintiff testified that defendant had told her that the money would be hers; that it would be "our loan". She further testified that in discussing both the Milward loan and the Carty loan, defendant had said that he would make some provision for her "due to the fact that everything he had was in his mother's name, and if anything happened, I wouldn't have anything to live on".

Defendant denied that he had ever told plaintiff that he would give her the deed of trust and the note secured thereby. He could not recall ever telling Mr. Thompson how to endorse the note. He stated he did not know how the notes were assigned. While defendant and plaintiff were still husband and wife, they had executed a quit-claim deed releasing a part of the land described in the Carty deed of trust from the lien, which quit-claim deed contained the following words: "This deed of quit-claim, being made in release of and satisfaction in part for a certain deed of trust, dated January 24, 1952, recorded in the Recorder's Office, within and for said County of Phelps aforesaid, in Book 71, page 615. The grantors herein being the assignees of said deed of trust and note." Defendant testified that he had not read those words in the deed.

Mr. B. F. Thompson testified that he was the official custodian of the records of B. F. Thompson, Inc. He described how the records were prepared on each loan made by the company and what information was contained in the records. This information included "the name the note was assigned to". He stated that this was the normal and regular course of business procedure, and that all such records were prepared from information taken directly from the notes and deeds of trust covering the various loans. He testified that he actually prepared the record on the Milward note in the usual manner as described and that record showed, among other things, the following "* * * note assigned to Dr. H. L. Glynn or Lucille Glynn; * * *". In reply to the question of how B. F. Thompson, Inc., happened to assign the Milward note to Dr. and Mrs. Glynn, he said, "If I remember right, Dr. instructed us to do that."

We will first consider defendant's second assignment of error, that is, that the trial court erred in admitting in evidence and considering the contents of business records of B. F. Thompson, Inc., in determining how the Milward note was assigned.

It is admitted that the promissory note in question was by the defendant deposited with the bank in Rolla, Missouri, for collection and was paid in full by the makers, the note surrendered to them and destroyed.

B. F. Thompson testified that he was the president of B. F. Thompson, Inc., and was the official custodian of the records of said corporation. He testified that he personally handled the sale of this note, received from plaintiff the payment for the same and delivered it to her. He gave this testimony:

"Q. Now, did you—when you delivered the note, did you endorse it in any manner? A. We endorsed it; yes, sir."

He testified that after he delivered the note to plaintiff he never saw it any more. He testified:

"Q. Do you remember the actual date that you assigned the note for endorsement and sold it? A. Well, according to our records here, it was on March the 6th, 1951.

"Q. Do you have with you the records of B. F. Thompson, Incorporated, —A. I do.

"Q. As the president of B. F. Thompson, Incorporated, do you have the custody, the official custody of those records? A. I do.

"Q. How were those records prepared, Mr. Thompson? A. Well, they are set up on a sheet for—like all of our loans are. The name—

"Q. Is that record that you have there prepared as any other record in the usual course of your business there? A. Yes, sir. They are all prepared the same way.

"Q. And what do you purport to include in those records covering these loans? A. The name of the giver of the loan, the rate of interest, the amount of the payments and the dates of it, and what the deed of trust was on, and the name the note was assigned to.

"Q. Who actually prepared the record, Mr. Thompson? A. I think I copied this from our notes, not from the note, possibly from the deed of trust.

"Q. Where did you obtain the information that went into the record? A. From our notes, from the deed of trust.

"Q. Is that the way you normally prepare those records in B. F. Thompson, Incorporated? A. Yes, sir. They are all made that way.

"Q. And the information which went into this particular record, did you obtain it from the same sources and in the same manner as you do in your ordinary course of business there? A. Yes, sir.

"Q. What do those records show with reference to what happened to this Carty note? A. Assigned to Dr. H. L. Glynn and Lucille Glynn."

On re-direct examination, the witness testified:

"Q. With reference to the Milward loan, Mr. Thompson, did you prepare a record, an office record there in your office covering that loan as you did on the Carty loan? A. Yes, sir.

"Q. Was it prepared in the same manner? A. Yes, sir.

"Q. Did you prepare that record? A. I think I did. It looks like my typewriter. I don't remember doing it, but I rather think I did.

"Q. Was that done in the usual course of business there of B. S. Thompson, Incorporated? A. It was.

"Q. And what information does that record contain; just—"

This question was objected to as hearsay and then this objection was made:

"Mr. Becker: We will object to any testimony concerning the contents of that record or the record itself, on the grounds it is a self-serving statement and the note itself would be the best evidence of the references made therein."

Plaintiff's attorney made this statement: "If the Court, please, in connection with that objection, Mr. Thompson is here as a defendant in this case, the company is here as a defendant in this case, and I think we can show what their records show with reference as to what happened to this note."

The objection was overruled and this testimony given:

"Q. Will you show what your records show—will you state what your records show with reference to the Milward loan? A. The date of the note was February the 24th, 1951; P. N. Milward and Nelle V. Milward, R.F.D. 1, Rolla, Missouri; loan, $3500.-00; 6 per cent interest; first payment due April 1st, 1951; 3-6-51, note assigned to Dr. L. Glynn or Lucille Glynn; one-half per cent service; note, deed of trust and insurance policy and abstract to Mrs. Glynn; escrow paid, taxes and insurance, escrow to pay taxes and insurance."

Over the objection of the defendant this evidence was given by Thompson:

"Q. How did you happen to assign it to Dr. and Mrs. Glynn? A. If I remember right, Dr. instructed us to do that."

On cross-examination, Mr. Thompson testified that he had no personal recollection of the endorsement on the back of the note. He gave this testimony:

"Q. You are testifying now to what you—from what you find from

the records of your office? A. That is right.

"Q. Did you make the record on the Milward note from which you testified? A. I am reasonably sure I did. It is my typewriter.

"Q. Do you know whether you made it before or after you delivered the note to Dr. Glynn? A. I couldn't say to that.

"Q. Do you know, of your own recollection, whether it contains a copy of that recitation on that note? A. Well, in general, it is what the note called for."

The witness testified that he did not know that the same words on the back of the note were in the record. On re-cross-examination he stated that in preparing the records they typed what is shown on the note that is assigned, the date and to whom it is assigned. He gave this testimony:

"Q. And do you show the name of the person to whom you assign it? A. Yes, sir."

Section 490.680 RSMo 1949, V.A.M.S., provides:

"A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

Section 490.690 reads: "Sections 490.660 to 490.690 shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it."

Section 490.670 provides: "The term 'business' shall include every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not."

■ The purpose of Uniform Business Records as Evidence Law is to make admissible records or other entries which, without the law, would be hearsay and inadmissible. State v. Hampton, Mo.Sup., 275 S.W.2d 356.

In Hancock v. Crouch, Mo.App., 267 S.W.2d 36, 43, the law is stated:

" * * * Of course, the Uniform Business Records as Evidence Act contemplates that the trial court should determine initially whether 'the sources of information, method and time of preparation were such as to justify * * * admission' of business records. Section 490.680 RSMo 1949, V.A.M.S.; Melton v. St. Louis Public Service Co., supra [363 Mo. 474], 251 S.W.2d [663] loc. cit. 671(19); Lynch v. St. Louis Public Service Co., Mo. App., 261 S.W.2d 521, 525(11). It has been said that the Act 'grants to the trial court a wide discretion in determining whether the mode of keeping the books justified their admission' and that 'a holding of the sufficiency of the evidence as to the foundation will not be disturbed if supported by substantial although conflicting evidence or inferences therefrom.' * * "

In Fisher v. Gunn, Mo.Sup., 270 S.W.2d 869, 879, the law is stated:

"While the trial court must of necessity have a wide discretion to determine whether he is satisfied that 'the sources of information, method and time of preparation' of any given record 'were such as to justify its admission', and while an appellate court should not ordinarily interfere with the exercise of such discretion, yet, where, as here, there appears nothing in the evidence which indicates any factual basis upon which to exclude the evidence in the exercise of a sound discretion, we must hold that the trial court erred in excluding the exhibit."

Defendant contends that the record evidence offered, as to the manner of endorsement, was inadmissible unless identified by some witness to be a true and correct copy of the endorsement on the lost or destroyed notes.

We find that this contention is without merit under the evidence in this case. Thompson, who was the custodian of the records, testified that the records made in the transaction contained the endorsement on the note; that he got the information from the note or deed of trust when he prepared the record. He testified that when plaintiff gave him the check for the note he surrendered the same to her. It would have been impossible for him to have secured the information concerning the endorsement from the deed of trust so he must have secured it from the note. The determination of whether a satisfactory foundation has been laid for the admission of the record in this case or the reading of the record into the evidence is for the trial court. Hancock v. Crouch, supra. The purpose of the Uniform Business Records as Evidence Law is to avoid the many antiquated and technical rules of the common law regarding admissibility of business records as evidence. Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663.

Defendant's first allegation of error is that the evidence is insufficient to support the judgment of the court.

Under Section 510.310, subd. 4 RSMo 1949, V.A.M.S. (Civil Code) the law is provided:

"* * * The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * *" Eiswirth Const. & Equipment Co. v. Glenn Falls Insurance Co., Mo.App., 240 S.W.2d 973.

Plaintiff testified that she and defendant discussed the purchase of the note in questioning prior to its purchase; that defendant stated he wanted to make provisions for her because all of his property was in his mother's name; that he gave her $3,500 in cash with which to pay the purchase price and stated that when the note was purchased it would be "our note". Thompson testified that defendant directed him as to how the note should be assigned and the evidence showed that the note was assigned to "Dr. H. L. Glynn or Lucille Glynn". Defendant admits that after the divorce he collected all of the proceeds of the note. We think there is no dispute that the judgment is for the proper amount, being half of the proceeds collected on the note after the divorce. The only question is the sufficiency of the evidence to show that the note was held as an estate by the entirety.

Defendant cites two cases to support his contention. Sterne v. Woods, 11 Mo. 638 and Forrester v. Scoville, 51 Mo. 268. Sterne v. Woods held that a court of equity would not decree the execution of a new deed in the place of one alleged to have been fraudulently destroyed where the evidence left a doubt as to whether the former deed was ever delivered. Forrester v. Scoville held that in an action in the nature of a suit in equity to divest a defendant of his title to certain lands, the evidence in order to warrant a decree in favor of the plaintiff must be so clear, definite and positive as to leave no reasonable ground for hesitancy on the part of or in the mind of the trial judge.

In defendant's argument under this allegation of error he makes this statement:

"There is nothing clear, definite or certain about any of the testimony upon which a claim can be based that an estate by the entirety was created. Too much is left to inference and unfounded presumption."

In Cullum v. Rice, 236 Mo.App. 1113, 162 S.W.2d 342, 344, the law is stated:

"Following the common law as we do in Missouri, we can not escape the conclusion that all choses in action, payable to *husband and wife* or to *husband or wife* are presumed to be estates by the entirety. * * *"

The same rule of law is declared by the Supreme Court in Simon v. St. Louis Union Trust Co., 346 Mo. 146, 139 S.W.2d 1002, 1004. (See authorities cited.) This case holds that the presumption could be rebutted by clear and convincing proof.

In State Bank of Poplar Bluff v. Coleman, Mo.App., 240 S.W.2d 188, 189, this court held that there can be an estate by the entirety in a bank account (citing much authority), and the court said:

"And that is so whether the husband or the wife, or both, furnish the money that goes into the account. * *

"The common law relative to estates by the entirety governs in Missouri. Schwind v. O'Halloran, 346 Mo. 486, 142 S.W.2d 55; Linders v. Linders, 356 Mo. 852, 204 S.W.2d 229; McElroy v. Lynch, Mo.Sup., 232 S.W. 2d 507; Frost v. Frost, 200 Mo. 474, 98 S.W. 527, 118 Am.St.Rep. 689.

"* * * The presumption is that it is an estate by the entirety, Cullum v. Rice, 236 Mo.App. 1113, 162 S.W.2d 342.

"It makes no difference if they are not so designated, if. in fact, they are husband and wife."

In Johns v. McNabb, Mo.Sup., 247 S.W.2d 640, 642, it is held that where property is held by an estate by the entirety a divorce terminates that status and the parties become tenants in common. This same law is declared in Gardine v. Cottey,. 360 Mo. 681, 230 S.W.2d 731.

In Johnson v. Johnson, Mo.App., 268 S.W.2d 439, this court held that where a husband purchased realty taking title in the name of himself and wife presumptively does so to provide for the wife.

Under the holdings of our court that where a promissory note, as in the case at bar, is endorsed to the husband and wife, there is a presumption that it was intended to create an estate by the entirety. The presumption is that the husband intended the conveyance as a provision for his wife. Bender v. Bender, 281 Mo. 473, 220 S.W. 929. It is true that this is a rebuttable presumption. Thierry v. Thierry, 298 Mo. 25, 249 S.W. 946, but in order that the presumption be overthrown, the evidence must be clear, strong, unequivocal, and so definite and positive as to leave no room for doubt in the mind of the chancellor.

The rule that where a husband uses his own money and takes title in his wife's name there is a presumption that the husband intended to make a gift to the wife as declared in the following cases—Thieman v. Thieman, Mo.Sup., 218 S.W.2d 580; Linders v. Linders, supra; Lewis v. Lewis, 354 Mo. 415, 189 S.W.2d 557.

In the case at bar the fact that defendant collected the note in full, after the divorce, and released the deed of trust from the record does not overcome the presumption. Simon v. St. Louis Union Trust Co., 346 Mo. 146, 139 S.W.2d 1002.

While under the Civil Code it is our duty to review the. case upon both the law and the evidence, we will not set aside the judgment unless clearly erroneous and due regard will be given the opportunity of the trial court to judge of the credibility of the witnesses. We find that the evidence supports the judgment of the court and there is no merit in defendant's first contention.

Judgment affirmed.

STONE and RUARK, JJ., concur.